■ DAVID COHEN et al., as Coadministrators of the Estate of ADAM COHEN, Deceased, Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 109503.) (Action No. 1.) BARBARA MINKOFF, as Administrator of the Estate of JORDAN SATIN, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 109502.) (Action No. 2.) IRA RICHMAN et al., as Coadministrators of the Estate of JONAH RICHMAN, Deceased, Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 109504.) (Action No. 3.) [854 NYS2d 253]—

Malone Jr., J. Appeal from an order of the Court of Claims (Milano, J.), entered May 22, 2007, which denied defendant's motion for summary judgment dismissing the claims.

On August 12, 2003, a group of approximately 20 to 30 young adults who were working as counselors at summer camps in the Adirondacks went to a popular swimming hole in an area of the Adirondack State Park located on the Boquet River in Essex County known as Split Rock Falls for a day of swimming and relaxing. Adam Cohen, Jonah Richman and Jordan Satin (hereinafter collectively referred to as decedents) and David Altschuler were among those in the group. At approximately 3:00 P.M. that day, Altschuler, decedents and a few others decided to go to a whirlpool area downstream from the main swimming hole. The water in the whirlpool area was turbulent and 15 feet higher than normal due to recent heavy rains. Although warned by his brother not to enter the water due to the strong current, Altschuler did so anyway and struggled to stay afloat. In response, decedents jumped in to save him. Tragically, all four young men drowned.

As a result of decedents' deaths, claimants, as administrators of decedents' estates, filed claims against defendant alleging negligence and wrongful death. Following joinder of issue, defendant moved for summary judgment dismissing the claims. The Court of Claims denied the motion, resulting in this appeal.

Initially, we note that "[a]s a landowner, [defendant] is subject to the same rules of liability as a private citizen and must act reasonably in view of all the circumstances" (*Johnston v State of New York*, 127 AD2d 980, 980 [1987], *lv denied* 69 NY2d 611 [1987]; *see Preston v State of New York*, 59 NY2d 997, 998 [1983]; *Basso v Miller*, 40 NY2d 233, 241 [1976]). As such, defendant "has a duty to take reasonable precautions to prevent accidents which might foreseeably occur as the result of dangerous terrain on its property" (*Walter v State of New York*, 185 AD2d 536, 538 [1992]), by posting warning signs or otherwise neutralizing dangerous conditions (*see Preston v State of New York*, 59 NY2d at 999; *Walter v State of New York*, 185 AD2d at 538). However, the duty to take reasonable precautions does not extend to open and obvious conditions that are natural geographic phenomena which "can readily be observed by those employing the reasonable use of their senses" (*Tarricone v State of New York*, 175 AD2d 308, 309 [1991], *lv denied* 78 NY2d 862 [1991]; *see Cramer v County of Erie*, 23 AD3d 1145, 1146 [2005]; *Rosen v New York Zoological Socy.*, 281 AD2d 238, 238-239 [2001]; *Duclos v County of Monroe*, 258 AD2d 925, 926 [1999]; *Tushaj v City of New York*, 258 AD2d 283, 284 [1999], *lv denied* 93 NY2d 818 [1999]; *Coote v Niagara Mohawk Power Corp.*, 234 AD2d 907, 908 [1996]; *Plate v City of Rochester*, 217 AD2d 984, 985 [1995], *lv denied* 87 NY2d 801 [1995]; *Diven v Village of Hastings-On-Hudson*, 156 AD2d 538, 539 [1989]). In such situations, defendant is not liable for injuries caused thereby.

Resolution of the case at hand turns upon whether the whirlpool area where the tragic drownings occurred presented the type of danger triggering a landowner's duty to take reasonable precautions. The location and appearance of the whirlpool area are relevant to this inquiry. While the main swimming hole commonly used by visitors at Split Rock Falls is located near a main highway, evidence was presented that the whirlpool area where the deaths occurred is not a high use area, nor is it easily accessible from this point. Rather, it is situated approximately 300 yards to one quarter of a mile downstream from the swimming hole and is not connected to it by a footpath. There are only two means of reaching it, either by maneuvering along the rocky shoreline, as the small group of counselors did in this case, or by walking along the roadway and cutting down a steep embankment through the woods.

Rescue personnel described the whirlpool area as a "cavern-like area" creating a "hydraulic, that was formed by water coming over a rock and then taking a hard right-hand turn and then going downstream" and also "a box" in which "a large

volume of water . . . was coming down rapidly by the falls, resulting in a great deal of aeration, white foamy water." Officials agreed that heavy rains during the weeks preceding the incident in question raised the water level 15 feet higher than normal, significantly increasing the turbulence. In fact, divers were unable to enter the water to undertake rescue efforts immediately after the incident due to the dangerous condition presented by the raging water.

Furthermore, it is evident from the statements of the camp counselors present at the scene that they were aware of the high water level and ensuing danger presented by the turbulent conditions. One counselor described the whirlpool area as approximately seven feet across, with "water spinning in a circle pretty fast." Others, including Altschuler's brother, recognized the danger that the strong current presented, even to strong swimmers like the victims and, for that reason, chose to stay out of the water. In fact, Altschuler's brother urged Altschuler to do the same, to no avail. Significantly, another counselor who witnessed the incident observed that, given the rough water, "[i]t was obvious . . . that jumping in the water to try to save them would be futile."

The observations of the counselors and rescue personnel, as well as the compelling photographic evidence in the record, establish that the whirlpool area was an open and obvious hazard that comprised a part of the natural environment of the Boquet River, the danger of which was readily apparent to a person reasonably using his or her senses (*see Tagle v Jakob*, 97 NY2d 165, 169-170 [2001]). This, combined with the fact that the area was not easily accessible from the more commonly used main swimming hole, leads us to conclude that defendant did not owe a duty to neutralize the danger presented thereby. This conclusion is consistent with those cases which have held that a landowner does not owe a duty with respect to natural transitory conditions existing in bodies of waters, such as the presence of sandbars (*see DeWick v Village of Penn Yan*, 275 AD2d 1011, 1012 [2000]; *Smyth v County of Suffolk*, 172 AD2d 741, 742 [1991]; *Perez v Town of E. Hampton*, 166 AD2d 640 [1990]), rip currents (*see Graham v County of Suffolk*, 34 AD3d 527, 528 [2006]) or rogue waves (*see Cimino v Town of Hempstead*, 110 AD2d 805, 805-806 [1985], *affd* 66 NY2d 709 [1985]), and the dangers created by them. The cases of *Mesick v State of New York* (118 AD2d 214 [1986], *lv denied* 68 NY2d 611 [1986]) and *O'Keeffe v State of New York* (140 AD2d 998 [1988], *appeal dismissed* 73 NY2d 756 [1988]), relied upon by claimants, do not compel a contrary conclusion as they involved man-made

hazards that altered naturally existing conditions in such a manner as to affirmatively create a danger.

In an effort to defeat defendant's motion, claimants presented evidence that the whirlpool created a hazard by virtue of its tendency to pull swimmers underwater, creating, in effect, a "drowning machine," which was not apparent from viewing the surface or readily known by individuals not experienced with white water. Even accepting this evidence as true, the unknown mechanics of the whirlpool do not transform it into a latent danger imposing a heightened duty on defendant. Nor does the fact that another drowning previously occurred in the same vicinity impose such a duty on defendant. In view of the foregoing, we find that defendant cannot be held liable for negligence or wrongful death under the particular circumstances presented. Accordingly, defendant's motion must be granted and the claims dismissed.

Cardona, P.J., Mercure, Spain and Stein, JJ., concur. Ordered that the order is reversed, on the law, without costs, and claims dismissed. [*See* 15 Misc 3d 1144(A), 2007 NY Slip Op 51135(U).]