*99 OPINION OF THE COURT
Egan Jr., J.
Where, as here, a visitor to a state park passes by and fails to observe posted warning signs — expressly alerting him or her to the very danger ultimately encountered — ventures into a prohibited location and sustains injuries as a result thereof, and the state has otherwise maintained the park in a reasonably safe condition, such visitor must bear responsibility for the resulting misadventure. Accordingly, for the reasons that follow, we reverse the underlying order and grant defendant’s motion for summary judgment dismissing the claim against it.
Taughannock Falls State Park is located in the Village of Trumansburg, Tompkins County, along the western shore of Cayuga Lake. At the western end of a three-quarter-mile long, glacially created gorge lies Taughannock Falls, a 215-foot vertical waterfall surrounded by overhanging cliffs approximately 400 feet high. Taughannock Creek runs through the gorge in a generally west to east direction — eventually emptying into Cayuga Lake at its eastern most terminus.
The falls may be viewed — safely—from various platforms and overlooks located along three of the designated hiking trails in the park. Two of these trails, the North Rim Trail and the South Rim Trail, run along the top of the gorge and offer visitors a view of the falls from above. The third trail, the Gorge Trail, runs parallel to the southern edge of the creek bed, eventually crossing the creek via a pedestrian footbridge and terminating at an observation area located approximately 400 feet from the base of the falls. The topography of the creek bed changes significantly along the way. In the vicinity of what is described as the “lower falls,” the stone slabs on the floor of the creek bed appear relatively flat — albeit very slippery. In the vicinity of the pedestrian bridge, however, individual rocks and boulders of varying size and dimension — many of which bear sharp, jagged edges — abound. Beyond these boulders lies the “plunge pool” at the base of the falls.
On the morning of August 22, 2005, Deborah A. Rowan (hereinafter decedent) and claimants (decedent’s husband and his two children) — all of whom spent the previous evening tent camping at the park — decided to hike to the falls. After descending a long staircase near their campsite, the family turned right, passing directly in front of a large sign warning park visitors to, among other things, “STAY ON MAIN TRAILS” and “BEWARE *100 OF FALLING ROCKS.”[1] Instead of proceeding to one of the designated trails, however, the family headed down an unmarked path to the creek bed, turned west toward the falls and began walking.
The water level in the creek was quite low and, when the family reached the “lower falls” — described by decedent’s husband as being approximately six feet high — decedent and her husband walked around the falls while the children climbed up and over the rocky structure comprising it. The family then reunited in the creek bed and continued west toward the “upper falls,” i.e., Taughannock Falls, eventually reaching the pedestrian footbridge leading from the Gorge Trail to the designated observation area. On the east side of the bridge— facing the family as they proceeded toward the falls — were four additional warning signs, advising the family that they were in a “FALLING ROCK AREA” and instructing them to “STOR” “PROCEED NO FURTHER” and “RETURN TO [THE] TRAIL.”[2] The family continued west, however, passing underneath the pedestrian bridge and ultimately arriving at the plunge pool/base of the falls, where they lingered for approximately 10 to 25 minutes.
As the photographs taken by the family that day all too clearly depict, decedent was — at the relevant point in time — standing directly at the base of the falls underneath the rocky overhang— approximately 400 feet beyond the designated observation area; decedent’s husband was ahead (east) of her (approximately 370 feet from the observation area at the end of the Gorge Trail), and the children, in turn, were ahead of their father and proceeding in a generally easterly direction toward the pedestrian bridge. Upon hearing a noise, decedent’s husband looked up, observed rocks falling from the face of the falls and dropped to the ground and covered his head, while onlookers shouted a *101 warning to the children and others in the vicinity of the plunge pool. After the dust from the rock fall settled, decedent’s husband and the children — all of whom sustained various lacerations and bruises — reunited, but decedent was nowhere to be seen. Returning to the base of the falls, decedent’s husband began digging through the accumulated rocks and uncovered decedent, who had been struck in the head by a large, sharp-edged rock that, according to her husband, had dislodged from the cliff face directly above where she had been standing. Decedent was evacuated and flown by helicopter to a hospital in Chemung County, where she died later that day.
Claimants thereafter commenced this action against defendant alleging that defendant failed to maintain the park in a reasonably safe condition and seeking damages for personal injuries and wrongful death. Following joinder of issue and extensive discovery, defendant moved for summary judgment dismissing the claim. The Court of Claims denied defendant’s motion, finding a question of fact as to the adequacy of the warning signs provided. This appeal by defendant ensued.
Defendant bears the same duty here as any other landowner — namely, “to take reasonable precautions to prevent accidents which might foreseeably occur as the result of dangerous terrain on its property” (Walter v State of New York, 185 AD2d 536, 538 [1992]; see Preston v State of New York, 59 NY2d 997, 998 [1983]; Cohen v State of New York, 50 AD3d 1234, 1235 [2008], lv denied 10 NY3d 713 [2008]; O’Keeffe v State of New York, 140 AD2d 998, 998-999 [1988], appeal dismissed 73 NY2d 756 [1988]), which includes a duty to warn others of the hazards existing thereon (see Preston v State of New York, 59 NY2d at 998; Cohen v State of New York, 50 AD3d at 1235; see also Grossman v Target Corp., 84 AD3d 1164, 1165 [2011]). The duty to warn, however, does not extend to “open and obvious” dangers — particularly those encompassing “natural geographic phenomena which ‘can readily be observed by those employing the reasonable use of their senses’ ” (Cohen v State of New York, 50 AD3d at 1235, quoting Tarricone v State of New York, 175 AD2d 308, 309 [1991], lv denied 78 NY2d 862 [1991]; see MacDonald v City of Schenectady, 308 AD2d 125, 128 [2003]; Casela v City of Troy, 161 AD2d 991, 991 [1990]; Diven v Village of Hastings-On-Hudson, 156 AD2d 538, 539 [1989]; see also Melendez v City of New York, 76 AD3d 442, 442-443 [2010]; Cramer v County of Erie, 23 AD3d 1145, 1146 [2005]).
Defendant initially contends that the danger posed by the sheer cliff walls surrounding Taughannock Falls is open and *102 obvious and, as such, it had no duty to warn park patrons of the potential for falling rocks. Having viewed the photographs contained in the record on appeal, which clearly depict both the fragmented nature of the soaring, overhanging rock face and the boulder-strewn plunge pool and creek bed, it arguably is difficult to understand how claimants and decedent could have failed to appreciate the dangers posed thereby. That said, £<[f]or a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses” (Garrido v City of New York, 9 AD3d 267, 268 [2004] [emphasis added], citing Tagle v Jakob, 97 NY2d 165 [2001]) — a finding that we are unable to make here.[3]
Having concluded that defendant was not relieved of its duty to warn, we must ascertain whether the warnings that defendant admittedly provided were sufficient to apprise claimants and decedent of the very danger that they ultimately encountered. In this regard, the issue is not whether another type or configuration of warning sign — one that was larger in size, brighter in color or stronger in tone — would have persuaded claimants and decedent to follow the Gorge Trail in the first instance or, having entered the creek bed, compelled them to turn back once they reached the pedestrian bridge. Rather, the question is whether the signs that were provided by defendant — both at the bottom of the staircase and on the pedestrian bridge itself — sufficiently conveyed the specific danger to which claimants and decedent would be exposed by entering the creek bed and proceeding to the base of the falls.[4] To our analysis, the answer to that question is “Yes.”
While claimants each testified that they did not recall seeing any of the relevant warning signs, there is no dispute that those *103 signs were in place on the day in question (compare O’Keeffe v State of New York, 140 AD2d at 999 [no signs posted warning marina users of strong current in flushing inlets]; Dakin v State of New York, 284 App Div 53, 55 [1954] [no signs posted along trail to warn of danger of falling rocks]). As noted previously, in addition to the sizeable “DO NOT ENTER” sign, the remaining warning signs on the pedestrian bridge not only instructed claimants and decedent to “STOP,” “PROCEED NO FURTHER” and “RETURN TO [THE] TRAIL” but, further, expressly and unequivocally advised claimants and decedent of the very hazard that ultimately gave rise to this claim, i.e., falling rocks. Thus, we are of the view that the size and placement of the signs posted and maintained by defendant, as well as the language employed, were sufficient — as a matter of law — to warn claimants and decedent of the peril at issue (compare Walter v State of New York, 185 AD2d at 538-539; Trimble v State of New York, 263 App Div 233, 235 [1942]) — a conclusion that is in no way altered by either the presence of other people in the vicinity of the plunge pool at the time of the rock fall or claimants’ suggestion that they missed the warning signs on the pedestrian bridge because they were watching their footing. Simply put, claimants and decedent were bound to see that by which the ordinary operation of their senses was there to be seen (see Johnston v State of New York, 127 AD2d 980, 981 [1987], lv denied 69 NY2d 611 [1987]; Henderberg v State of New York, 52 AD2d 713, 714 [1976]) and, although they had been “invited” to explore the park and enjoy its scenic vistas, the warning signs admittedly in place on that day, by their express terms, significantly limited the extent of that invitation (compare Trimble v State of New York, 263 App Div at 235).[5]
Our conclusion that defendant discharged its duty to warn does not end our analysis, however, for we still must consider whether defendant met its duty to maintain the park in a reasonably safe condition (see DiVietro v Gould Palisades Corp., 4 AD3d 324, 325 [2004]; Cupo v Karfunkel, 1 AD3d 48, 51 [2003]; *104 Cohen v Shopwell, Inc., 309 AD2d 560, 562 [2003]; MacDonald v City of Schenectady, 308 AD2d at 128-129; Soich v Farone, 307 AD2d 658, 659-660 [2003]). In so doing, we must bear in mind that the issue is not what more defendant theoretically could have done to deter access to the base of the falls or, more specifically, prevent decedent’s death and claimants’ injuries. Rather, the relevant inquiry is whether the precautions defendant did undertake to protect park patrons were reasonable under all of the attendant circumstances — circumstances that should, in our view, include a recognition that the falls are both a natural geographical phenomenon and one of the attractions that draws visitors to the park in the first instance. Although the reasonableness of a landowner’s conduct often presents a factual issue for a jury to resolve, we are satisfied that defendant has demonstrated — as a matter of law — that it maintained the park in a reasonably safe condition.
In addition to the aforementioned warning signs, defendant provided designated trails encompassing or leading to overlooks and viewing platforms from which park visitors could safely view the falls. Along such trails were educational signs explaining both the geological forces that cause rocks to fall from the cliffs unexpectedly and why the restricted area near the base of the falls is dangerous. Defendant also constructed a pedestrian footbridge — affording park visitors safe passage across Taughannock Creek — that leads to an observation area approximately 400 feet from the base of the falls.[6] Additionally, each spring park personnel “scaled” the walls of the cliffs to dislodge any loose or crumbling rock that could fall upon the designated hiking trails. Finally, although the extent to which the park was staffed on the day in question is unclear, the record nonetheless reflects that park police and other park personnel routinely patrolled the hiking trails, observation points and the area near the base of the falls and, when patrons were observed in a prohibited area, they were either asked to leave or, if they failed to comply, issued a ticket for violating established park rules. Such proof, to our analysis, is sufficient to establish that defendant undertook reasonable precautions to maintain its prop *105 erty in a reasonably safe condition and, more to the point, protect park patrons from being injured by falling rocks— particularly with respect to the restricted area near the base of the falls.
In opposing defendant’s motion, claimants make much of the fact that defendant admittedly was on notice that some park patrons — despite the availability of designated hiking trails and the presence of warning signs, other visual cues and enforcement patrols — nonetheless would venture into the creek bed and hike to the base of the falls. Contrary to claimants’ assertion, the fact that a relatively small group of people would disregard posted warning signs and violate park rules does not demonstrate either the existence of a pervasive enforcement problem or that defendant’s efforts to curb such illegal conduct were deficient. Nor are we persuaded that proof of such violations is, under all of the attendant circumstances, sufficient to raise a question of fact as to either the adequacy of the warning signs provided or the reasonableness of defendant’s efforts to keep park visitors out of harm’s way. Some determined hikers will follow a path of their own choosing to a desired destination regardless of the risk associated with that decision, the signs advising against it or the physical barriers impeding their progress. And while defendant indeed cannot turn a blind eye to the behavior of the park’s visitors, it also cannot be cast in the role of an insurer of their safety (see generally Preston v State of New York, 59 NY2d at 998-999; Ray v State of New York, 305 AD2d 791, 791 [2003]; Frontz v State of New York, 147 AD2d 854, 855 [1989], lv denied 74 NY2d 605 [1989]).
Accordingly, for all the reasons previously discussed, we are satisfied that defendant — having provided specific warning signs and otherwise maintained the park in a reasonably prudent manner — cannot be held liable for either decedent’s death or the injuries suffered by claimants.
Rose, J.P., Malone Jr., Stein and Garry, JJ., concur.
Ordered that the order is reversed, on the law, without costs, motion granted, summary judgment awarded to defendant and claim dismissed.

. The full text of the sign reads: “WARNING — PROCEED WITH CAUTION-STAY ON MAIN TRAILS — KEEP AWAY FROM CLIFF EDGE— BEWARE OF FALLING ROCKS AND LOOSE STONES ON TRAIL-PEOPLE ON TRAIL BELOW — DO NOT THROW OR KICK STONES INTO GORGE — NO SWIMMING — TRAILS CLOSE AT DARK.”

. Two of the four signs on the pedestrian bridge are mounted to the railing. The first, measuring 30 inches by 30 inches, is a red and white “DO NOT ENTER” road sign; the other, a rectangular wooden sign, proclaims: “WARNING-STOP [in red letters] — YOU ARE IN A FALLING ROCK AREA— PROCEED NO FURTHER — RETURN TO TRAIL.” The remaining two signs are posted on the center bridge abutments — approximately seven feet above the creek bed — and state: “FALLING ROCK AREA — PROCEED NO FURTHER-RETURN TO TRAIL — WADING OR SWIMMING PROHIBITED.”

. Indeed, this Court has struggled with the geological features of this park (and the dangers posed thereby) in the past, observing — albeit in different analytical contexts and under different factual circumstances — both that the area at the base of the falls is “an area of danger which should [be] obvious to a reasonably prudent observer” (Terry v State of New York, 79 AD2d 1069, 1069 [1981]) and that the general public “could not be expected to know anything about shale cliffs, talus slopes and the like” (Dakin v State of New York, 284 App Div 53, 55 [1954]).

. In addition to the five signs previously referenced (see notes 1 and 2, supra), there apparently was a sixth sign located on the south side of the cliff wall between the pedestrian bridge and the base of the falls. We say “apparently” because although the sign is depicted in a photograph contained in the record on appeal, the text thereof is not discernible and, notably, most of the park employees deposed in this matter seemed to be unaware of its existence.

. Notably, “[t]he invitation to use a public park is not an absolute one. It is rather an invitation to use the facilities of the park in the manner in which and for the purposes for which they were designated and intended” (Pope v State of New York, 198 Misc 31, 36 [1950], affd 277 App Div 1157 [1950]). That invitation, in turn, does not require defendant “to maintain its parks in such condition that its patrons may wander at will over each and every portion thereof’ (id. at 36), nor does it mandate that defendant make its parks safe for “all kinds of conduct, all kinds of temperaments and all kinds of people” (id. at 39).

. The observation area is surrounded by a low stone wall, to which signs are affixed warning visitors to “STAY ON THIS SIDE OF WALL” and not to go beyond that point — specifically, “STOP — YOU ARE IN A FALLING ROCK AREA — PROCEED NO FURTHER — RETURN TO TRAIL.” As noted previously, at the time of her death, decedent was standing approximately 400 feet beyond this point — well past what defendant had determined to be a safe viewing distance.