=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 153
Joseph W. Powers, &c.,
         Appellant,
         v.
31 E 31 LLC, et al.,
         Respondents.




         Alani Golanski, for appellant.
         Linda M. Brown, for respondents.
         New York State Trial Lawyers' Association; Defense
Association of New York, Inc., <u>amici</u> <u>curiae</u>.












GRAFFEO, J.:

         In this negligence case where plaintiff fell off the

setback roof of an apartment building, we conclude that

defendants failed to demonstrate their entitlement to summary

judgment on the grounds relied upon by the Appellate Division.

We therefore reverse the Appellate Division order.

- 1 -

I.

In the early morning hours of August 23, 2008, plaintiff Joseph W. Powers and several others, all of whom had been consuming alcohol, visited a friend's apartment located on the second floor of a 13-story apartment building in Manhattan. During the visit, the group stepped through a window in the apartment to access the adjacent roof deck. The window opening was 17½ inches wide by 31 inches tall, and the flat roof area was approximately five feet wide and extended the length of the building above the first floor. This setback portion of the roof abutted the exterior wall and railing of a structure behind the apartment building. In one area of the roof there was a 25-foot-deep air shaft situated between the two buildings. There was no railing, fence or parapet wall around the perimeter of the air shaft. The opening of the air shaft measured approximately six feet, four inches by eight feet, five inches.

Plaintiff and the others walked around the setback roof for a few minutes and then re-entered the apartment through the window they had used earlier. After a time, the group realized that plaintiff was no longer with them. They undertook a search and discovered that plaintiff was lying unresponsive at the bottom of the air shaft. Apparently, plaintiff had re-exited the apartment through the window and fallen off the unguarded edge of the setback roof into the air shaft. As a result of this tragic accident, plaintiff sustained debilitating injuries.

In 2010, plaintiff, through his guardian ad litem William T. Powers, commenced this personal injury action against the owners and managers of the apartment building, defendants 31 E 31 LLC and B & L Management Co., Inc.  Plaintiff alleged that defendants had created and maintained a dangerous condition and negligently caused his injuries by failing to install a railing, parapet wall or fence around the perimeter of the air shaft.  In support of his negligence claim, plaintiff further asserted that the absence of a guardrail violated the Multiple Dwelling Law and New York City Building Code.

Defendants answered and, after discovery, moved for summary judgment dismissing the complaint, arguing primarily that plaintiff's accident was unforeseeable and that the 1968 and 2008 New York City Building Codes did not govern the condition of this particular roof because the construction of the apartment building predated those codes.  Supreme Court denied defendants' motion, finding their proof insufficient to demonstrate that the building codes did not require a protective guard on the setback roof and holding that there were questions of fact concerning foreseeability (38 Misc 3d 1211[A], 3-5 [Sup Ct, NY County 2012]).  The court also rejected defendants' additional arguments that they could not be held liable on the basis that plaintiff had no memory of the accident and the air shaft was an open and obvious condition (see id. at 6-7).

The Appellate Division reversed and dismissed the

complaint (105 AD3d 657 [1st Dept 2013]).  The court found that
the 1979 certificate of occupancy submitted by defendants
demonstrated that the building was grandfathered out of the 1968
and 2008 Building Codes and complied with the earlier regulations
(see id. at 657-658).  The court further concluded that
defendants had no duty to mitigate the risk of an accident such
as plaintiff's fall because, "given the nature and location of
the setback, it was unforeseeable that individuals would choose
to access it" (id. at 657).  Because it disposed of the case on
those grounds, the court did not reach defendants' alternative
arguments.

We granted plaintiff leave to appeal (21 NY3d 863
[2013]) and now reverse.

The central issue before us is whether defendants'
summary judgment proof was sufficient to refute plaintiff's
allegations of negligence -- more particularly, plaintiff's
assertion that the building codes required the erection of a
railing or parapet on the setback roof.  Defendants argue that
the building was exempted from the 1968 and 2008 Building Codes,
relying on an exception contained in the code in effect when the
building was constructed in 1909.  According to defendants, their
summary judgment proffers, which consisted primarily of an expert
affidavit and a certificate of occupancy issued by the City,
established that the 1909 exception applied and that subsequent
alterations to the building did not require updated compliance.

Alternatively, defendants claim that, even if the 1968 Building Code governs, it does not mandate that the setback roof have a protective guard.

Plaintiff counters that defendants failed to eliminate questions of fact concerning the applicability of the 1909 exception or whether the later conversion of the building to multiple dwelling use obligated defendants to bring the entire building into compliance with the 1968 Building Code. Plaintiff contends that, by granting defendants summary judgment, the Appellate Division assigned too much weight to the certificate of occupancy. We agree.

Under the Multiple Dwelling Law, every open roof area of a multiple dwelling erected or converted to residential use after April 18, 1929 must be protected by a parapet wall or guard railing unless the department charged with code enforcement deems such protection unnecessary (see Multiple Dwelling Law §§ 9 [2]; 62 [1]). The parties agree that under the building code in effect in 1909, all exterior walls over 15 feet high -- except where finished with gutters -- were required to have two-foot parapet walls extending above the roof (see L 1982, ch 275, § 479; 1906 Building Code of the City of New York § 43; 1899 Building Code of the City of New York § 43). This exclusion for walls finished with gutters was carried into subsequent building codes, which applied to new construction (see 1938 Building Code of the City of New York §§ C26-5.0, C26-444.0; 1916 Building Code

of the City of New York §§ 4, 259).  Thus, if the setback roof in this case had gutters in 1909, the lack of a railing would not necessarily indicate a violation of the early codes.

By 1968, however, instead of excepting walls finished with gutters, the building code mandated that buildings which were "more than [22] feet in height and have roofs that are flatter than [20] degrees to the horizontal shall be provided with a parapet . . . railing[,] or fence" of a specific height (1968 Building Code of the City of New York [Administrative Code of City of NY] § 27-334).  The 2008 Building Code contains a similar requirement (see NY City Building Code [Administrative Code of the City of NY tit 28, ch 7] § 1509.8).

In light of these code provisions, we reject defendants' claim that the 1968 and 2008 Building Codes require the installation of railings or parapets only on the highest roof of a building.  Although the 1968 Building Code refers to a "parapet . . . railing[,] or fence" in the singular, it specifically provides that "words used in the singular include the plural, and the plural the singular" (1968 Building Code of the City of New York [Administrative Code of City of NY] §§ 27-231, 27-334).  The definition of "roof" in the 1968 Building Code refers to "[t]he topmost slab or deck of a building," but the term "building" must be construed as if followed by the phrase "or part thereof" (id. § 27-232).  As the setback roof is the topmost slab of "part of the building," it falls within the

purview of section 27-334 (id.).  Furthermore, although section 27-334 provides that protective guards may be located six feet inward from the face of the exterior wall, this is not a mandatory condition (see id. § 27-334).  Contrary to defendants' contention, a setback roof that is less than six feet wide requires a protective guard and, consequently, if the 1968 Building Code applies, the absence of a parapet or railing on the edge of the setback roof may run counter to the requirements of the code.

Like its predecessors, the 1968 Building Code required existing buildings to conform to the new standards under certain circumstances (see generally id. subchapter 1, art 4).  Here, the parties agree that the updated code governs the entire apartment building if post-1968 alterations were made to the structure that, within a 12-month period, cost more than 60% of the building's value (see id. § 27-115).  The 1968 Building Code also provides that alterations resulting in changes to the occupancy or use classification, or the conversion to multiple dwelling use, may require that the entire building comply with the updated code requirements, depending on whether public safety and welfare are endangered (see id. §§ 27-118, 27-120).

As the proponent of summary judgment, defendants bore the burden of "tendering sufficient evidence to demonstrate the absence of any material issues of fact" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; see Winegrad v New York Univ.

Med. Ctr., 64 NY2d 851, 853 [1985]).  Specifically, defendants
needed to eliminate any doubt as to whether, under the foregoing
regulatory scheme, the absence of a protective guard on the
setback roof conformed to code.  To that end, defendants should
have established that the roof was finished with gutters in 1909
and that the 1979 conversion did not trigger an obligation to
bring the entire building, including the unaltered setback roof,
into compliance with the 1968 Building Code.  In our view,
defendants' proof fell short in both respects.

In support of their motion, defendants submitted the
affidavit of engineer Cornelius F. Dennis and a certificate of
occupancy issued by the City in 1979.  In the absence of the 1909
building plans, however, the engineer's assertion that the
building was finished with gutters in 1909 was speculative (cf.
Ramos v Howard Indus., Inc., 10 NY3d 218, 224 [2008]; Diaz v New
York Downtown Hosp., 99 NY2d 542, 544 [2002]).  Although he
opined that the 1979 conversion did not implicate section 27-115
or require that the building be brought into compliance with the
1968 Building Code, the engineer based his conclusion solely upon
the estimated cost of the alterations cited in the permit
application, without including the value of the building in 1979.[1]

---

[1]  Under section 27-119 of the 1968 Building Code, the cost
of making alterations for purposes of applying section 27-115
must be determined by adding the estimated cost of the proposed
alterations to the actual cost of any and all alterations made in
the past twelve months (see 1968 Building Code of the City of New
York [Administrative Code of City of NY] § 27-119).  The value of

Dennis averred only that there was "no doubt in [his] mind" that the building was worth "some multiple of $2,300,000."  These conclusory assertions are insufficient to demonstrate the absence of any material issue of fact (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).

Nor does the 1979 certificate of occupancy satisfy defendants' burden to present a prima facie showing of entitlement to judgment as a matter of law, and our decision in Hyman v Queens County Bancorp, Inc. (3 NY3d 743 [2004]) does not hold otherwise.  In Hyman, the plaintiff bore the burden of establishing that the proffered building code provision was in effect at the relevant time and that updated compliance was required because the plaintiff had raised the building code in opposition to the defendant's summary judgment proof, which had shown there was no defective or dangerous condition on the premises (see id. at 744-745).  In light of the certificate of occupancy presented by the defendant, paired with the absence of any indication that the stairway was defective, or any evidence that the proffered codes applied, the plaintiff in Hyman failed to raise a legitimate issue of fact to defeat summary judgment (see id.).

In this case, it was defendants' burden to prove at the

the building must be calculated, at the applicant's option "on the basis of one and one-quarter times the current assessed valuation of the building, as adjusted by the current state equalization rate, or on the basis of the current replacement cost of the building" (id.).

outset that the absence of a railing did not violate the building
regulations (see Lesocovich v 180 Madison Ave. Corp., 81 NY2d
982, 985 [1993] [holding that the *defendant* failed to establish
that the updated building code did not apply]).  On this record,
defendants have not adequately demonstrated that the roof was
finished with gutters in 1909, and the certificate of occupancy
is inadequate to establish that the setback roof fully complied
with all code mandates on the date of its issuance or 29 years
later on the day of plaintiff's accident (see Solomons v Douglas
Elliman LLC, 94 AD3d 468, 470 [1st Dept 2012]; see generally
Garrett v Holiday Inns, 58 NY2d 253, 262-263 [1983]; see also NY
City Construction Codes [Administrative Code of the City of NY
tit 28, ch 1] § 28-118.1).  Hence, under the circumstances of
this case, issues of fact concerning the roof's compliance with
the building codes remain.[2]

Plaintiff also argues that, under our holding in
Lesocovich v 180 Madison Ave. Corp. (81 NY2d 982 [1993], supra),
the Appellate Division erred in concluding that there are no
triable questions of fact as to whether his accident was
foreseeable.  Defendants posit that holding them liable for

_____

     [2]  The record contains some indication that, in 1979,
defendants elected to convert the building to multiple dwelling
use under the 1968 Building Code.  Plaintiff, however, makes no
argument that this election necessarily required that unaltered
parts of the building be brought into updated compliance pursuant
to section 27-120 of the 1968 Code.  Thus, we have no occasion to
pass on that question.

plaintiff's injuries would require the imposition of a new duty of care, and they claim that Lesocovich is factually distinguishable. Defendants' arguments are unpersuasive.

It is well settled that, as landowners, defendants have "a duty to exercise reasonable care in maintaining [their] . . . property in a reasonably safe condition under the circumstances" (Galindo v Town of Clarkstown, 2 NY3d 633, 636 [2004]; see Basso v Miller, 40 NY2d 233, 241 [1976]). The existence and scope of this duty is, in the first instance, a legal question for the courts to determine by analyzing the relationship of the parties, whether the plaintiff was within the zone of foreseeable harm, and whether the accident was within the reasonably foreseeable risks (see Sanchez v State of New York, 99 NY2d 247, 252 [2002]; Di Ponzio v Riordan, 89 NY2d 578, 583 [1997]; Palsgraf v Long Is. R.R. Co., 248 NY 339, 344 [1928] ["[t]he risk reasonably to be perceived defines the duty to be obeyed], rearg denied 249 NY 511 [1928]).

The focus of our inquiry, therefore, is whether it was foreseeable that defendants' tenants and their guests would access the setback roof and be exposed to a dangerous condition from the absence of a railing or guard around the air shaft. In Lesocovich, the plaintiff fell off a setback roof while visiting a friend's apartment and alleged that the fall was due to the absence of a railing or parapet (see 81 NY2d at 983). As here, the setback roof was not an area included in the tenant's lease,

no permission had been obtained for her to use it and the landlord denied prior knowledge of its use.  Also, the roof in Lesocovich was similarly accessible only through a window (see id. at 983-984).  In that case, we denied the defendant's summary judgment motion, holding that reasonable minds could disagree as to whether the plaintiff's use of the roof was foreseeable (see id. at 985).

     Although the roof in Lesocovich may have been more suitable to recreational use, here, the setback roof was flat and of sufficient size and length to comfortably permit several individuals to stand or walk on it.  Access to the roof was easily obtained through the hallway window, and neither plaintiff nor his friends had any difficulty exiting.  In Lesocovich, the plaintiff had to climb on furniture to reach the small window leading to the roof; yet we still held that a jury could find the tenant's use of the window to access the roof foreseeable (see id.).  Here, the tenant of the apartment that plaintiff was visiting testified that he had stepped onto the roof through the window approximately 15 times in the two months preceding the accident to smoke cigarettes and that the previous tenant had often done the same.  According to the resident, evidence of this use was visible because cigarette butts and garbage littered the roof.  On this record, as in Lesocovich, reasonable minds could differ as to whether plaintiff's use of the roof and his resulting fall were foreseeable, thereby precluding the grant of

summary judgment to defendants on that ground.

Because we conclude that defendants failed to make a prima facie showing of entitlement to judgment as a matter of law with respect to whether the absence of a protective guard on the setback roof violated the building codes and whether the accident was foreseeable, we need not consider the sufficiency of plaintiff's opposing papers (see Alvarez, 68 NY2d at 324).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to the Appellate Division for consideration of issues raised but not reached on the appeal to that court.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and case remitted to the Appellate Division, First Department, for consideration of issues raised but not determined on the appeal to that court.  Opinion by Judge Graffeo.  Chief Judge Lippman and Judges Smith, Pigott, Rivera and Abdus-Salaam concur.  Judge Read dissents and votes to affirm for the reasons stated in the memorandum of the Appellate Division (105 AD3d 657 [2013]).

Decided October 21, 2014