State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:  January 29, 2015          518820
_____

MATTHEW E. FEUERHERM,
                  Appellant,
        v                                MEMORANDUM AND ORDER

JEFF D. GRODINSKY,
                  Respondent.
_____


Calendar Date:  November 14, 2014

Before:  Lahtinen, J.P., McCarthy, Egan Jr. and Devine, JJ.


                      _____


        O'Connor & Kruman, PC, Cortland (Randolph V. Kruman of
counsel), for appellant.

        Santacrose & Frary, Albany (James Lonano of counsel), for
respondent.


                      _____


Egan Jr., J.

        Appeal from an order of the Supreme Court (Rumsey, J.),
entered July 11, 2013 in Cortland County, which granted
defendant's motion for summary judgment dismissing the complaint.

        At all times relevant, defendant, an out-of-possession
landlord, was the owner of certain rental property located at 78-
80 Groton Avenue in the City of Cortland, Cortland County.  The
property in question was a three-story duplex, and the 80 Groton
Avenue portion of the premises housed seven bedrooms, including —
insofar as is relevant here — a third-floor bedroom facing the
rear of the premises.  Access to a portion of the roof — an area

measuring approximately 20 feet by 27 feet with a slope ranging from 5.8% to 8% and an elevation of roughly 25 feet – could be obtained by climbing through a small window in this rear-facing bedroom.

At some point prior to November 2, 2007, plaintiff moved into 80 Groton Avenue and began occupying the bedroom in question.[1]  After completing his shift at a local pizza parlor, plaintiff went to a bar known as Hooley's, which was located across the street from defendant's duplex, where he consumed a combination of beer and liquor.  Plaintiff left the bar at approximately 3:00 a.m. on November 2, 2007 and, at approximately 7:45 a.m., was discovered lying on the ground in the backyard of defendant's premises.  Based upon the physical evidence observed at the scene, it appeared that plaintiff had fallen from the roof.[2]

Plaintiff thereafter commenced this action against defendant, alleging violations of Property Maintenance Code of New York State §§ 304.1, 304.2, 304.10 and 304.12 (see generally 19 NYCRR 1226.1) and asserting that defendant failed to maintain the premises in a reasonably safe condition.  Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint.  Supreme Court granted defendant's motion, and this appeal by plaintiff ensued.

_____

[1]  The record contains conflicting proof as to when plaintiff moved into 80 Groton Avenue.  Plaintiff testified that he moved in on November 1, 2007, while a written statement from one of plaintiff's roommates indicated that plaintiff had moved in "a few weeks" prior to that date.  Plaintiff was not a signatory to the lease governing the premises, and defendant testified that he was unaware that plaintiff was residing there.

[2]  Plaintiff does not recall falling from the roof or the events leading up thereto, and the accident apparently was unwitnessed.

We affirm. To prevail on his motion for summary judgment, defendant was required to demonstrate that he maintained his property in a reasonably safe condition and that he neither created nor had actual or constructive notice of the allegedly dangerous condition existing thereon (see Dillenbeck v Shovelton, 114 AD3d 1125, 1126 [2014]; Rodriguez v Binghamton Hous. Auth., 101 AD3d 1222, 1222 [2012]; Raczes v Horne, 68 AD3d 1521, 1522 [2009]). For purposes of a premises liability claim, constructive notice "requires a showing that the condition was visible and apparent and existed for a sufficient period of time prior to the accident to permit defendant[] to discover it and take corrective action" (Tate v Golub Props., Inc., 103 AD3d 1080, 1081 [2013] [internal quotation marks and citation omitted]; see Ravida v Stuyvesant Plaza, Inc., 101 AD3d 1421, 1422 [2012]).

In support of his motion, defendant tendered the affidavit of a professional engineer, who opined that "the . . . roof area located outside the third[-]floor bedroom of . . . 78-80 Groton Avenue as constructed and maintained conformed with all applicable building codes on November 2, 2007,"[3] including the code provisions relied upon by plaintiff (see Property Maintenance Code of New York State §§ 304.1, 304.2, 304.10, 304.12), and, more to the point, that the roof "was reasonably safe for its intended purpose and was not a dangerous condition." The engineer further averred that, because the area in question

---

[3] Although defendant's compliance with applicable code provisions admittedly is not dispositive as to the issue of whether he maintained the premises in a reasonably safe condition (see Kellman v 45 Tiemann Assoc., 87 NY2d 871, 872 [1995]; Cook v Indian Brook Vil., Inc., 100 AD3d 1247, 1248 [2012]), we nonetheless note that, as of April 2007, any building code violations existing at the property had been corrected to the satisfaction of the local code enforcement officer and, further, that none of the cited violations pertained to or otherwise implicated the roof area in question.

was not being used for "living, sleeping, eating or cooking," the applicable building codes did not require that "railings or guards . . . be installed along the edge of the roof area."  Such proof, in our view, was sufficient to establish that protective measures were not required on the subject roof (compare Trosa v Di Cristo, 91 AD3d 944, 945 [2012] ["the defendant's submissions failed to eliminate all triable issues of fact as to whether handrails were statutorily required at the location where the plaintiff fell"]; Wininger v Congregation Nechlas Meharim, 83 AD3d 827, 828 [2011] ["defendants failed to eliminate all triable issues of fact as to whether the existing steps, handrail, and door violated applicable statutory and code provisions"]) and that defendant otherwise maintained his property in a reasonably safe condition.

Additionally, even assuming that a hazardous condition indeed existed, nothing in the record suggests that defendant created such condition or had actual or constructive notice thereof.  Defendant's predecessor in title, John Shannon, who also served as one of defendant's local property managers, described the "rubberized roof" as being in "very good shape" when he purchased the property in 1995 or 1996, and defendant's examination before trial testimony does not indicate that he made any alterations or modifications to the roof after he purchased the property in February 2007.  Although both defendant and Shannon testified that they did not take affirmative steps to block access to the roof from the bedroom in question, Shannon noted that had anyone attempted to barricade the only window in that room, "the code officer would [have gone] bonkers" because people would not have been able to get out in case of a fire.

As to the issue of notice, Shannon testified that he "never saw kids out on the roof" and that he otherwise was unaware of such activity – either during the time that he owned the property or thereafter.  Although plaintiff and one of his roommates testified that people would in fact "go out onto the roof to hang out or smoke," neither of them indicated that defendant or any of

his property managers were aware of this activity, and the record is silent as to the frequency with which such activity occurred. Shannon further testified that the property was configured in such a way that, unless one went out onto the roof itself, one "really [could not] get a view of it" for purposes of ascertaining whether there was any evidence that tenants were using that space. Finally, although three cigarette butts were collected at the scene (apparently from the roof), the record is otherwise devoid of proof that the roof was being used by plaintiff or his roommates or that defendant was possessed of sufficient facts to place him on notice of such activity. Under these circumstances, Supreme Court properly granted defendant's motion for summary judgment dismissing the complaint.

Contrary to plaintiff's assertion, neither Powers v 31 E 31 LLC (24 NY3d 84 [2014]) nor Lesocovich v 180 Madison Ave. Corp. (81 NY2d 982 [1993]) warrants a contrary result. In both Lesocovich and Powers, the Court of Appeals found that reasonable minds could differ as to whether the use of the roof in question by the injured plaintiff was foreseeable — a conclusion that was based, in large measure, upon factors not present here, i.e., lingering questions of fact as to whether the relevant building codes or statutes required some sort of railing or parapet wall around the perimeter of the roof, as well as record evidence attesting to the obvious and frequent use of the roof for recreational purposes. Specifically, in Powers, the tenant of the apartment that the injured plaintiff was visiting at the time of his fall testified that "he had stepped onto the [subject] roof through [a] window [in his apartment] approximately 15 times in the two months preceding the accident to smoke cigarettes and that the previous tenant had often done the same" (Powers v 31 E 31 LLC, 24 NY3d at 95). According to this same tenant, "evidence of this use was [plainly] visible because cigarette butts and garbage littered the roof" (id.). Similarly, in Lesocovich, access to the roof was accomplished through a bedroom window in the tenant's apartment, and the tenant testified that, when she took possession of the apartment, "the screen had been removed

from the bedroom window and was lying on the roof, and cinder blocks that might have been used as sitting stools were on the roof" (Lesocovich v 180 Madison Ave. Corp., 81 NY2d at 983). Such proof, combined with the tenant's testimony as to repairs made to the roof by the landlord's agents, led the Court of Appeals to conclude that reasonable minds could differ as to "whether the defendant should have foreseen that tenants and their guests would use the roof for recreational purposes" (id. at 985).

Here, however, the record is devoid of proof that the roof in question was used by plaintiff or his roommates for a sufficient period of time to place defendant on notice of such activity and, in our view, is insufficient to raise a question of fact as to whether plaintiff's use of the roof was foreseeable. As noted previously, plaintiff had moved in – at best – a few weeks prior to his accident, he had been out on the roof only a few times before he fell and, unlike both Lesocovich and Powers, there was scant evidence that the roof had been routinely and, more to the point, visibly used for recreational purposes by plaintiff or others. To our analysis, the mere fact that the roof in question was accessible from the window in plaintiff's bedroom is insufficient to raise a question of fact as to whether plaintiff's use of that roof area was foreseeable. Accordingly, Supreme Court's order is affirmed.

Lahtinen, J.P., McCarthy and Devine, JJ., concur.

ORDERED that the order is affirmed, with costs.




ENTER:

Robert D. Mayberger
Clerk of the Court