# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1280
CA 14-00948
PRESENT: SCUDDER, P.J., CENTRA, FAHEY, LINDLEY, AND DEJOSEPH, JJ.

---

RAYMOND PINK AND MICHELLE PINK,
PLAINTIFFS-RESPONDENTS,

           V                            MEMORANDUM AND ORDER

MATTHEW RICCI, DEFENDANT-RESPONDENT,
MARK WILBUR, CHRISTIN WILBUR, ROME YOUTH
HOCKEY ASSOCIATION, INC., WHITESTOWN
YOUTH HOCKEY ASSOCIATION, INC.,
DEFENDANTS-APPELLANTS,
ET AL., DEFENDANTS.

---

GOLDBERG SEGALLA LLP, SYRACUSE (DAVID E. LEACH OF COUNSEL), FOR
DEFENDANTS-APPELLANTS MARK WILBUR AND CHRISTIN WILBUR.

ROEMER WALLENS GOLD & MINEAUX LLP, ALBANY (MATTHEW J. KELLY OF
COUNSEL), FOR DEFENDANTS-APPELLANTS ROME YOUTH HOCKEY ASSOCIATION,
INC. AND WHITESTOWN YOUTH HOCKEY ASSOCIATION, INC.

CONWAY & KIRBY, PLLC, LATHAM (ANDREW W. KIRBY OF COUNSEL), FOR
PLAINTIFFS-RESPONDENTS.

HISCOCK & BARCLAY, LLP, SYRACUSE (MATTHEW J. LARKIN OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

---

     Appeals from an order of the Supreme Court, Oneida County
(Patrick F. MacRae, J.), entered January 6, 2014. The order, inter
alia, denied the motion of defendants Rome Youth Hockey Association,
Inc., and Whitestown Youth Hockey Association, Inc. for summary
judgment.

     It is hereby ORDERED that the order so appealed from is modified
on the law by granting in part the motion of defendants Rome Youth
Hockey Association, Inc. and Whitestown Youth Hockey Association, Inc.
and dismissing the complaint against defendant Whitestown Youth Hockey
Association, Inc. and as modified the order is affirmed without costs.

     Memorandum: Plaintiffs commenced this action seeking damages for
injuries sustained by Raymond Pink (plaintiff) when defendant Matthew
Ricci allegedly struck him during a fight that also involved fellow
spectators at a youth hockey game. Ricci thereafter pleaded guilty to
assault in connection with the fight. On the first of the prior
appeals, we concluded, inter alia, that Supreme Court (Shaheen, J.),
properly granted plaintiffs' motion to compel Ricci to respond both to

their discovery demands, which included requests for copies of all court and police records from the criminal proceedings against Ricci, and to questioning during his deposition concerning those records (*Pink v Ricci*, 74 AD3d 1773, 1774). We also concluded that Ricci, through cross claims he asserted against the remaining defendants, waived his statutory privilege of confidentiality with respect to those records (*id.*). On the subsequent prior appeals, we concluded, inter alia, that Supreme Court (Shaheen, J.) erred in granting plaintiffs' cross motion for summary judgment on liability, and that the court erred in granting the respective cross motions of defendants Mark Wilbur and Christin Wilbur (Wilburs) and defendants Rome Youth Hockey Association, Inc. (RYHA) and Whitestown Youth Hockey Association, Inc. (WYHA; collectively, hockey associations) for summary judgment on their cross claims against Ricci for contribution (*Pink v Ricci*, 100 AD3d 1446, 1447-1448).

The hockey associations and the Wilburs now appeal from an order of Supreme Court (MacRae, J.) that, inter alia, denied their respective motion and cross motion for summary judgment dismissing the complaint and cross claims against them. Contrary to the contention of the hockey associations, there is an issue of fact whether the duty of RYHA to plaintiffs included the duty to protect plaintiffs from Ricci's conduct (*see generally Barry v Gorecki*, 38 AD3d 1213, 1215). "Foreseeability . . . determines the scope of [a] duty once it is determined to exist" (*Hamilton v Beretta U.S.A. Corp.*, 96 NY2d 222, 232) and, given the hostile environment in the arena before the fight, there is an issue of fact whether RYHA knew or should have known of the likelihood of the fight (*see Jacqueline S. v City of New York*, 81 NY2d 288, 294, *rearg denied* 82 NY2d 749). Here, the tensions in the stands built throughout the game such that we conclude that a trier of fact should determine whether RYHA had a duty to intercede and protect plaintiff (*see Jayes v Storms*, 12 AD3d 1090, 1090-1091; *Ash v Fern*, 295 AD2d 869, 870; *Cittadino v DeGironimo*, 198 AD2d 801, 802). We further conclude, however, that the court erred in denying that part of the motion of the hockey associations seeking summary judgment dismissing the complaint against WYHA, and we therefore modify the order accordingly. Here, the record establishes that WYHA did not own the arena and, unlike RYHA, WYHA did not lease even part of that facility. We thus conclude that WYHA is entitled to summary judgment because it owed no duty of care to plaintiffs (*see generally Parslow v Leake*, 117 AD3d 55, 60).

Finally, we conclude that the court properly denied the Wilburs' cross motion for summary judgment. The Wilburs contend that their conduct merely furnished the occasion for Ricci's assault of plaintiff, but on this record we conclude that the court properly declined to make that determination as a matter of law. Indeed, questions of proximate cause generally are for the jury (*see Prystajko v Western N.Y. Pub. Broadcasting Assn.*, 57 AD3d 1401, 1403; *see also McCarville v Burke*, 255 AD2d 892, 893).

All concur except LINDLEY, J., who dissents in part and votes to modify in accordance with the following Memorandum: I respectfully dissent in part. I agree with the majority that Supreme Court

properly denied the cross motion of defendants Mark Wilbur and Christin Wilbur for summary judgment dismissing the complaint and cross claims against them. I also agree with the majority that the court should have granted summary judgment to defendant Whitestone Youth Hockey Association, Inc., which, as the visiting team at the youth hockey game during which the fight in the stands occurred, clearly owed no duty of care to Raymond Pink (plaintiff). I disagree with the majority, however, with respect to the potential liability of defendant Rome Youth Hockey Association, Inc. (RYHA). In my view, the court also should have granted summary judgment to RYHA because it too owed no duty to protect plaintiff from being assaulted by another spectator at the hockey game.

It is well settled that "a possessor of land, whether he be a landowner or a leaseholder [such as RYHA], is not an insurer of the visitor's safety" (*Nallan v Helmsley-Spear, Inc*., 50 NY2d 507, 519; *see Maheshwari v City of New York*, 2 NY3d 288, 294). "Thus, even where there is an extensive history of criminal conduct on the premises, the possessor cannot be held to a duty to take protective measures unless it is shown that he either knows or has reason to know from past experience 'that there is a likelihood of conduct on the part of third persons . . . which is likely to endanger the safety of the visitor' (Restatement, Torts 2d, § 344, Comment *f*). Only if such conditions are met may the possessor of land be obliged to 'take precautions . . . and to provide a reasonably sufficient number of servants to afford a reasonable protection' (*id*.)" (*Nallan*, 50 NY2d at 519; *see Gray v Forest City Enters*., 244 AD2d 974, 974).

Here, there is no evidence that there were any prior fights among spectators at a youth hockey game involving teams from RYHA. In fact, plaintiffs have not cited a single instance in New York State history in which a spectator was injured during a fight at a youth hockey game. Thus, in my view, it was not foreseeable that a spectator would be assaulted by another spectator at a youth hockey game sponsored or hosted by RYHA, and RYHA therefore had no duty to protect plaintiff from being assaulted. In the words of Judge Cardozo, "[t]he risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf v Long Is. R.R. Co*., 248 NY 339, 344, *rearg denied* 249 NY 511; *see Powers v 31 E 31 LLC*, 24 NY3d 84, 94).

The majority appears to agree that, prior to the game, it was not foreseeable that a fight would break out in the stands. It thus follows that RYHA had no duty to provide security at the arena, or otherwise to take steps at that time to protect spectators from being assaulted by other spectators. The majority nevertheless concludes that, because "the tensions in the stands built throughout the game," an issue of fact exists whether RYHA knew or should have known of the likelihood of a fight. There is no evidence in the record, however, that any representative from RYHA was in the arena at the time so as to put RYHA on notice that a fight could ensue, and in any event by that time it would have been too late to arrange for security personnel to intervene.

The cases relied upon by the majority — *Jayes v Storms* (12 AD3d

1090), *Ash v Fern* (295 AD2d 869) and *Cittadino v DeGironimo* (198 AD2d 801) — are distinguishable because they involved fights at bars or restaurants where the owners of the establishments, or their employees, had observed the assailants' increasingly disruptive behavior over a period of time. Here, as noted, no one from RYHA observed the behavior of the spectators in the stands before plaintiff was assaulted. Plaintiffs cite no cases in New York or any other state where a youth athletic association has been deemed to have a duty to protect spectators from being assaulted by other spectators, and I could find none. I do not think this should be the first case to so hold. In sum, I conclude that, given the absence of prior fights among spectators at youth hockey games, it was not foreseeable that plaintiff would be assaulted by another spectator, and, thus, RYHA had no duty to protect him from that unanticipated harm.

Entered: February 6, 2015                     Frances E. Cafarell
                                              Clerk of the Court