THOMAS J. MAZERBO, Respondent, v MARK MURPHY, Appellant. [860 NYS2d 289]—

Cardona, P.J. Appeal from an order of the Supreme Court (Aulisi, J.), entered June 13, 2007 in Fulton County, which denied defendant's motion for summary judgment.

Plaintiff claims that on October 7, 2004, after arriving for his first day of work in a building owned by defendant, while traversing a dimly-lit hallway leading into the doorway of one of the offices, he tripped over a "protrusion" or bump in the concrete flooring that was covered by carpeting.[1] Subsequently, plaintiff commenced this action seeking damages for his injuries due to defendant's alleged negligence in failing to properly maintain said flooring. Defendant thereafter moved for summary judgment dismissing the complaint. Supreme Court denied that motion, prompting this appeal.

Notably, to establish entitlement to summary judgment, defendant was required to demonstrate as a matter of law that he maintained the subject property in a reasonably safe condition and "neither created the allegedly dangerous condition existing thereon nor had actual or constructive notice thereof" (*Richardson v Rotterdam Sq. Mall*, 289 AD2d 679, 679 [2001]; *accord Mokszki v Pratt*, 13 AD3d 709, 710 [2004]; *see Torosian v Bigsbee Vil. Homeowners Assn.*, 46 AD3d 1314, 1315 [2007]). Here, the record contains no proof establishing that defendant created the dangerous condition at issue, therefore, plaintiff cannot prevail on that theory. With respect to the issue of actual notice, defendant testified at his examination before trial that he had no specific knowledge of the protrusion in the carpet prior to plaintiff's fall. That statement was not contradicted by the deposition testimony of Carol Bowers, plaintiff's coworker, who worked in the office that plaintiff was about to enter at the time of the accident. Bowers indicated that, although she witnessed

---

1. According to plaintiff, the protrusion "was probably three or four inches in diameter and it stood up about a little over an inch, maybe an inch in height." In his deposition testimony, defendant confirmed the presence of a bump in the doorway and indicated it was caused by "unevenness" under the carpet at the point where two slabs of concrete met.

plaintiff's accident and tripped over the same protrusion a "day or so" earlier, she had not informed defendant of this specific "bump in the carpet." Thus, defendant correctly maintains that plaintiff did not raise arguable questions of fact concerning whether defendant created or had actual notice of the hazardous condition.

Nevertheless, turning to constructive notice, we conclude that Supreme Court properly denied defendant's summary judgment motion on that issue. A plaintiff can establish constructive notice through evidence that the defendant "was aware of an ongoing and recurring unsafe condition which regularly went unaddressed" (*Kivlan v Dake Bros.*, 255 AD2d 782, 783 [1998]; *see Talavera v New York City Tr. Auth.*, 41 AD3d 135, 136 [2007]). In that regard, where "a property owner has 'actual knowledge of the tendency of a particular dangerous condition to reoccur, he [or she] is charged with constructive notice of each specific recurrence of that condition' " (*Kivlan v Dake Bros.*, 255 AD2d at 783, quoting *Columbo v James River, II, Inc.*, 197 AD2d 760, 761 [1993]; *see Weisenthal v Pickman*, 153 AD2d 849, 851 [1989]).

Here, plaintiff presented proof demonstrating that defendant had previously received complaints concerning unevenness with respect to the concrete flooring in the approximate area where plaintiff's accident occurred. Specifically, Bowers testified that she and her coworkers complained on more than one occasion to defendant or his agent concerning the shifting concrete in the area by her office outside her door. She variously described the unevenness as "hole[s]," "dip[s]" or "indents" that would heave either up or down such that "[y]ou could feel yourself walking maybe one foot down, the other one not." According to Bowers, the shifting in the floor occurred regularly during the entire 19 years she worked in the building and it mainly happened down by her office because it "is on the actual slab." Notably, when asked how she "found out that the concrete had raised under the carpet" causing plaintiff's fall, Bowers replied, "Since '87 it's been that way."[2] She also testified that after he was told about the concrete moving "up and down," defendant generally would "have someone come in and pull the carpet or patch it." However, problems would continue to recur.

---

**2.** We note that our dissenting colleagues have chosen to cite certain words in Bowers' testimony as support for their view that the protrusion causing plaintiff's accident was somehow different from the prior defects that Bowers claims were reported to defendant. However, viewing her testimony as a whole, in context, and in the light most favorable to plaintiff as the nonmoving party (*see Raven Indus., Inc. v Irvine*, 40 AD3d 1241, 1242 [2007]), a fair inference to be drawn therefrom is that she considered the subject defect to be yet a further instance of an ongoing problem with the floor.

If credited, this proof would establish that defendant had knowledge of a recurring tripping hazard[3] in the same area, albeit not the precise *place*, where plaintiff later fell (*see Gutz v County of Monroe*, 221 AD2d 838, 839 [1995] [constructive notice of dangerous condition of tiles on stairs due to knowledge of "recurring problems with the tiles in other areas of the library"]; *see also Armstrong v Ogden Allied Facility Mgt. Corp.*, 281 AD2d 317, 318 [2001] [constructive notice could be found based upon knowledge of a "similar hazardous condition that was known to have existed for at least two years elsewhere in the building"]). Since this and other proof in the record raises an inference that there was a known recurring and pervasive problem with the concrete underneath the carpeting in the area where plaintiff was injured which was only superficially worked on, but never adequately addressed so as to repair the underlying problem, we conclude that a triable issue of fact exists as to constructive notice, precluding summary judgment in defendant's favor (*see Talavera v New York City Tr. Auth.*, 41 AD3d at 136; *Columbo v James River, II, Inc.*, 197 AD2d at 761).[4]

Peters and Malone Jr., JJ., concur.

Rose, J. (dissenting). We respectfully dissent because imputing constructive notice based upon a recurring condition would be unwarranted here even if we view plaintiff's allegations of fact as true. While there is evidence that defendant was aware of prior instances of slight unevenness due to some shifting and settling of his concrete floor elsewhere in the building, there is no allegation or proof that the prior unevenness was dangerous or that the prior conditions were similar to, and in the same location as, the condition which caused plaintiff's injury. Nor did those prior conditions ever go unaddressed by defendant. Rather, the undisputed evidence is to the contrary on each of these points.

"When a property owner has 'actual knowledge of the tendency of *a particular dangerous condition* to reoccur, he [or she]

---

**3.** The fact that protrusions, holes, dips or bumps in floors can constitute tripping hazards is well documented and we do not agree with our dissenting colleagues that a landowner has no duty of care with respect to a known hazard of that nature until *after* someone actually trips, falls or is injured.

**4.** It must be reiterated that this case concerns the denial of a summary judgment motion and not an "imposition of liability." There can be no question that the subject record contains numerous discrepancies, ambiguities and sharp credibility disputes that we believe should more appropriately be resolved by a trier of fact. We note that the role of an appellate court on such a motion is " '[i]ssue-finding, rather than issue-determination' " (*Raven Indus., Inc. v Irvine*, 40 AD3d at 1242, quoting *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]).

is charged with constructive notice of each specific recurrence of *that condition*' " (*Kivlan v Dake Bros.*, 255 AD2d 782, 783 [1998] [emphasis added], quoting *Columbo v James River, II, Inc.*, 197 AD2d 760, 761 [1993]). In addition, the recurring unsafe condition must be one that regularly went unaddressed (*see Kivlan v Dake Bros.*, 255 AD2d at 783). Unlike the recurring unsafe conditions which permitted the imputation of constructive notice in the cases cited by the majority, however, the prior conditions in defendant's building were neither the same nor in the same place as the condition that caused plaintiff's injury.

The deposition testimony established that plaintiff twisted his ankle and stumbled on a protrusion or bump under the carpeting in the doorway to Carol Bowers' office. Defendant, who later repaired a one-foot-square area where the bump had formed, testified that the floor of the 3,000-square-foot single-story building was a concrete slab on grade covered by carpeting. There was a seam in the concrete between the building's original concrete slab and a newer slab under an addition. The seam ran across the doorway from post to post. This description is uncontroverted and there is no evidence in the record that the seam extended into the hallway or any other area where Bowers previously had felt unevenness under foot. In addition, although Bowers had tripped on the bump in the doorway a day or so earlier, she confirmed that it had "just formed," and it is uncontradicted that neither she nor anyone else had reported it to defendant.

As for the previous unevenness or "dip[s]" that Bowers had reported to defendant, she attributed them to the effect of seasonal changes in temperature on the concrete slab on grade, and she stated that such depressions would appear one day and disappear the next without rhyme or reason. After she described the bump on which plaintiff fell as more of an "upheaval" in the concrete, Bowers again referred to the past occurrences as dips: "I mean, you could walk along and you go down in a dip, or the next day it could be up again." She did not describe the prior instances as bumps or upheavals.

Significantly, she also acknowledged that the instances of prior unevenness were minuscule and slight, further differentiating them from the one-inch high bump in her doorway. This difference between the prior conditions and the bump in Bowers' doorway distinguishes this case from those cited by the majority for the principle that a hazardous condition need not recur in the same location. In our view, those cases underscore the point that the prior recurring condition must be the same as, as well as in proximity to, the condition causing the accident

in order to fairly constitute constructive notice (*see Armstrong v Ogden Allied Facility Mgt. Corp.*, 281 AD2d 317 [2001] [finding potential constructive notice arising from the recurring protrusion of metal clips from the floor of the Javits Convention Center]; *Kivlan v Dake Bros.*, 255 AD2d at 783 [finding potential constructive notice arising from recurring oil spots outside the defendant's convenience store because the spot on which the plaintiff fell was exactly the same condition and was in "close proximity" to where oil spills had previously occurred]; *Gutz v County of Monroe*, 221 AD2d 838 [1995] [finding constructive notice as to loose cork tiles on the stairs of a law library arising from the defendant's knowledge of the same recurring problem with loose tiles elsewhere in the library; it was also noted that the defendant had stopped making repairs to the tiles for a number of years]).

Moreover, defendant was never told that anyone had ever tripped or fallen or been injured in any way by the slight depressions reported by Bowers. While a previous fall certainly would not be required to prove the danger of such depressions, there would have to be some evidence that the resulting height differential constituted a trip hazard rather than a trivial defect (*see Smith v Wilerdam Prop., Inc.*, 50 AD3d 1349, 1349 [2008]). There is no such evidence here. Nor is Bowers' testimony disputed that whenever unevenness was reported to defendant, he would repair it within a day, and the mere fact that unevenness may have occurred at another location at some later time does not imply that his repairs were superficial. Thus, the prior uneven conditions reported by Bowers cannot be fairly characterized as hazardous, regularly unaddressed or the same as that which caused the accident here.

As for the location of the prior unevenness, Bowers was asked only these questions and gave these answers after she said that the prior occurrences were transient dips or depressions:

"Q. Can you describe for me where this heaving occurred in relation to where [plaintiff] fell? In other words, was it throughout the entire building, or was it just—

"A. Mainly down where our RD was—rural development, our office, because that is on the actual slab.

"Q. And outside your door, it was not the same slab?

"A. I believe it is, yes.

"Q. You believe it is the same slab?

"A. Yes.

"Q. But you don't remember anyone ever pointing out to [defendant] the problem within the door frame where [plaintiff] fell?

"A. That had just formed."

Bowers does not state that unevenness ever occurred in or near the doorway to her office and the record simply does not disclose where the prior dips were located in relation to the doorway.

As there is no claim that the prior unevenness had caused or could cause anyone to trip or fall, defendant "is not responsible for injuries caused thereby unless it is shown that the construction of the [building] is inherently dangerous or that he failed to use care to remedy conditions which had become dangerous, after actual or constructive notice of such conditions. That has not been shown here" (*Miller v Gimbel Bros.*, 262 NY 107, 108-109 [1933]). Rather, the evidence presents nothing more than a " 'general awareness' that a dangerous condition may be present" and, thus, it "is legally insufficient to constitute [constructive] notice" (*Piacquadio v Recine Realty Corp.*, 84 NY2d 967, 969 [1994]). Holding otherwise here creates a precedent that expands the "recurring unsafe condition" rule beyond manageable bounds and will permit the imposition of liability in the absence of meaningful notice to the owner.

Accordingly, we would reverse and grant defendant's motion for summary judgment dismissing the complaint.

Carpinello, J., concurs. Ordered that the order is affirmed, with costs.