■ HILARIO MARTINEZ, Appellant-Respondent, v HUNTS POINT COOPERATIVE MARKET, INC., Respondent, and LISA MOTOR LINES et al., Respondents-Appellants. HUNTS POINT COOPERATIVE MARKET, INC., Third-Party Plaintiff-Respondent, v NEBRASKALAND, INC., et al., Third-Party Defendants-Respondents. [914 NYS2d 99]—

Order, Supreme Court, Bronx County (Sallie Manzanet-Daniels, J.), entered on or about May 5, 2009, which, insofar as

appealed from as limited by the briefs, granted defendant-respondent's (Hunts Point) motion for summary judgment dismissing the complaint and all cross claims as against it, and denied defendants-appellants' (collectively LML) motion for summary judgment dismissing the complaint and all cross claims as against them, unanimously affirmed, without costs.

Plaintiff, a warehouse worker employed by third-party defendant Nebraskaland, a meat supplier, asserts that he was injured on Nebraskaland's premises when a steel wheel and hook, together with six frozen goat carcasses hanging from the hook, dislodged from the overhead rail, and hit him on the shoulder. Plaintiff sued Hunts Point, the out-of-possession landlord of the premises, and LML, a freight transporter hired by Nebraskaland's seller, whose workers, known as "lumpers," transferred the carcasses from the delivery truck to the hook and rail. The basis of the claim against Hunts Point is the allegation that the overhead rail system was defective in that the rail was bent, which allegedly created a tendency for the hook to dislodge. The basis for the claim against LML is the allegation that its workers loaded too many carcasses onto the hook.

Assuming in plaintiff's favor that Hunts Point was contractually obligated under Nebraskaland's lease to repair defects in the overhead rail system, the action must nevertheless be dismissed as against Hunts Point because, as the motion court found, plaintiff failed to adduce evidence sufficient to rebut Hunts Point's prima facie showing that it did not have actual or constructive notice of the allegedly dangerous condition of the rail (*see Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 642-643 [1996]). The prima facie showing was made out by the deposition testimony of Hunts Point's general manager, who had personal knowledge of nonroutine repair requests, and of Nebraskaland's vice-president of operations, each of whom testified that he never observed damage to the overhead rail system and never received any complaints about it up to the date of the accident (*cf. Vaughan v 1720 Unico, Inc.*, 30 AD3d 315 [2006]).*
While this evidence may not affirmatively prove that no Hunts Point employee was ever told of the rail's condition prior to the accident, our jurisprudence does not "require a defendant [moving for summary judgment] to prove a negative on an issue as to which [it] does not bear the burden of proof" (*Strowman v Great Atl. & Pac. Tea Co.*, 252 AD2d 384, 385 [1998]; *see also Wellington v Manmall, LLC*, 70 AD3d 401 [2010] ["a defendant

---

* Indeed, when asked at his deposition whether "on the date of the accident . . . the rack system [was] in good operational and mechanical condition," the Nebraskaland vice-president answered in the affirmative.

is not required to prove lack of notice where the plaintiff has not pointed to any evidence of notice"]).

Plaintiff failed to raise an issue of fact in response to Hunts Point's prima facie showing that it did not have actual or constructive notice of the alleged dangerous condition of the rail. Plaintiff argues that actual notice was demonstrated by sworn statements of a coworker to the effect that, two months before the accident, the coworker overheard his supervisor complaining about the rail system on a phone call and that, after the call ended, the supervisor told the coworker that he had been speaking to an unidentified Hunts Point employee. Those statements are hearsay, however, insofar as they relate the supervisor's identification of the other party to the conversation, and therefore cannot be the sole basis for denying summary judgment (*see DiGiantomasso v City of New York*, 55 AD3d 502, 503 [2008]). We note that the record does not contain any deposition testimony or affidavit by the supervisor. Neither is an issue as to Hunts Point's constructive notice of the alleged dangerous condition of the rail system raised by the number of repair calls Hunts Point made to the premises demised to Nebraskaland over the preceding year or by the frequent visits made to the premises by the aforementioned Hunts Point general manager. None of the repair calls or visits concerned the rail, the alleged dislodging problem was intermittent, and the existence of the problem would not have been obvious to the Hunts Point general manager (who disclaimed expertise in dealing with rail systems) from a chance observation of the bent rail overhead (*see Delosangeles v Asian Ams. for Equality, Inc.*, 40 AD3d 550, 552 [2007] [visibility of air conditioner that ultimately fell from window did not "suggest( ) that a dangerous condition was visible, let alone visible and apparent" so as to give rise to constructive notice]; *Hayes v Riverbend Hous. Co., Inc.*, 40 AD3d 500, 500 [2007] [to give rise to constructive notice, "(m)ere notice of a general or unrelated problem is not enough; the particular defect that caused the damage must have been apparent"]).

Plaintiff's testimony that LML lumpers "always" loaded six carcasses onto the meat hooks raises an issue of fact as to whether the lumpers created the allegedly dangerous condition by overloading the hooks (*see Signorelli v Great Atl. & Pac. Tea Co., Inc.*, 70 AD3d 439, 439-440 [2010]). LML's assertion that six carcasses would not have created a dangerous condition is unsupported by expert affidavits and is otherwise conclusory. Absent argument from LML, we decline to consider the issue of whether LML made a delivery of carcasses to Nebraskaland on

the date of plaintiff's accident. Concur—Tom, J.P., Friedman, Nardelli, Acosta and Abdus-Salaam, JJ.