*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  May 5, 2016                    521770
_____

ERIC SCHEFFIELD et al.,
                        Appellants-
                        Respondents,

        v

VESTAL PARKWAY PLAZA, LLC,
                        Respondent,          MEMORANDUM AND ORDER
        and

BRRS ASSOCIATES et al.,
                        Respondents-
                        Appellants.
_____


Calendar Date:  March 22, 2016

Before:  Lahtinen, J.P., McCarthy, Garry and Mulvey, JJ.

_____


        Law Office of Alfred Paniccia Jr., Binghamton (Alfred
Paniccia Jr. of counsel), for appellants-respondents.

        Levene Gouldin & Thompson, LLP, Binghamton (Robert G.
Bullis of counsel), for BRRS Associates and another, respondents-
appellants.

        Barclay Damon LLP, Syracuse (Alan R. Peterman of counsel),
for Vestal Parkway Plaza, LLC, respondent.


_____


Garry, J.

        Appeal from an order of the Supreme Court (Tait, J.),
entered May 11, 2015 in Broome County, which, among other things,
granted a motion by defendant Vestal Parkway Plaza, LLC for
summary judgment dismissing the complaint against it.

In 2007, plaintiff Eric Scheffield was injured when he fell on property in the Town of Vestal, Broome County owned by defendant Vestal Parkway Plaza, LLC (hereinafter Vestal). Scheffield's fall occurred in a grassy area adjoining the parking lot of a shopping plaza. The property is fronted by the Vestal Parkway, a four-lane highway. It formerly fronted Ozalid Road, which ran parallel to Vestal Parkway, and consisted of two adjoining parcels owned separately by defendants Parkway Plaza, LLC (hereinafter Parkway) and BRRS Associates. The parcel owned by BRRS was subject to an easement granted in 1984 to the New York Telephone Company for a small parcel near Ozalid Road, together with an unspecified right of ingress and egress. A communications vault was built on the easement parcel. Ozalid Road was used for access to this vault until the Town abandoned the road in 1995 and transferred title to BRRS and Parkway. In 1996, BRRS conveyed its parcel to Parkway, which constructed the shopping plaza on the property, removed the paved surface of Ozalid Road, and replaced it with grass. In 2003, Parkway conveyed its interest in the property to Vestal.

According to plaintiffs, after the removal of Ozalid Road, workers for Verizon – New York Telephone Company's successor – accessed the communications vault by parking in the shopping plaza parking lot near the easement parcel, stepping over a low railing and walking down a grassy slope that borders the parking lot. Scheffield was in the course of his employment with Verizon and was approaching the vault when he slipped and fell on the slope. He and his spouse, derivatively, commenced this negligence action alleging that BRRS, Parkway and Vestal caused his injuries by failing to maintain the property in a reasonably safe condition and by creating a dangerous condition. Supreme Court granted a motion by BRRS and Parkway to dismiss the complaint for failure to state a cause of action. Upon appeal, this Court affirmed the dismissal of the claim for failure to maintain the property, but reversed as to the claim based upon the creation of an alleged dangerous condition (102 AD3d 992, 993-994 [2013]). In 2014, Vestal moved for summary judgment dismissing the complaint against it, and BRRS and Parkway also jointly did so; both motions asserted that plaintiffs could not establish that there was a dangerous condition or that defendants had notice of any such condition. The court denied the motion of

BRRS and Parkway, but granted Vestal's motion.  Plaintiffs appeal from the court's grant of summary judgment to Vestal, and BRRS and Parkway appeal from the denial of their motion for summary judgment dismissing the complaint.

Sheffield had performed work within the easement parcel between 10 and 20 times in the three years before his accident, and approximately twice in the week before his fall.  He had never previously had difficulty accessing the easement parcel, nor did he know of other Verizon employees who had experienced any problems.  On prior occasions, he had stepped over the railing that surrounded the parking lot in various locations and had used various routes across the grassy slope to reach the parcel.  On the day of the accident, Sheffield had made one trip from his parked van across the slope to the vault and back again without difficulty.  After returning to the van to obtain some equipment, he stepped over the railing in a different place, and then noticed that this part of the slope was steeper than the location he had previously used.  He stopped moving.  Heavy rain was falling and, as he stood briefly on the wet grass — which he described as very slippery — he fell down the slope.

As a general rule, "a landowner's liability for the condition of real property ceases when possession and control thereof is transferred" (Young v Hanson, 179 AD2d 978, 978-979 [1992]; see Bittrolff v Ho's Dev. Corp., 77 NY2d 896, 898 [1991]; Romel v Reale, 155 AD2d 747, 748 [1989]).  As noted in our previous decision, there is an exception in certain limited circumstances when a former landowner "affirmatively created the dangerous condition" (Marrero v Marsico, 218 AD2d 226, 229 [1996]; see 102 AD3d at 993).[1]  However, further development of

---

[1]  It bears noting that another narrow exception exists when the current owner has not had a reasonable time to discover and correct a dangerous condition that existed at the time of the conveyance (see Smith v Northern Lights Land Co., LLC, 80 AD3d 964, 965 [2011]).  That exception does not apply; this Court previously held that plaintiffs "failed to adequately set forth facts demonstrating that . . . Vestal did not have ample time to discover and address [any dangerous] condition" (102 AD3d at

the record reveals that this narrow exception does not apply to either of the property's former owners.  There is no evidence that BRRS took any affirmative actions that created a dangerous condition.  The record includes an affidavit by Marc Newman, a member of Parkway, averring unequivocally that BRRS had no involvement in the development and construction of the shopping plaza, which did not begin until after the property was conveyed to Parkway.  Plaintiffs submitted no contrary evidence, and their unsupported conjecture that BRRS might have been involved in the early stages of planning before the conveyance "is pure speculation [that] cannot be used to defeat summary judgment" (Piluso v Bell Atl. Corp., 305 AD2d 68, 70 [2003]).

As for Parkway, Supreme Court found issues of fact as to whether the construction of the shopping plaza created a dangerous condition.  However, the analysis described in Marrero is narrow.  It applies only when a former owner who is also acting as a construction contractor is alleged to have affirmatively created a dangerous condition (see Marrero v Marsico, 218 AD2d at 229).  In such cases, the former owner's liability is not based upon its ownership, possession or control of property, but, rather, upon the "modern rule" that holds building and construction contractors whose negligence results in the creation of a dangerous condition liable for foreseeable injuries to third parties, even after the property owner has accepted the work (Church v Callanan Indus., 285 AD2d 16, 18-19 [2001], affd 99 NY2d 104 [2002]; see Robertson v Amherst Paving, 302 AD2d 913, 913 [2003]; Colonno v Executive I Assoc., 228 AD2d 859, 860 [1996]).

Here, there is no evidence that Parkway engaged in any negligent construction activities.  Parkway acknowledges that the

_____

993), and a reasonable amount of time for such a condition to have been discovered has passed as a matter of law, in the 11 years after the conveyance from BRRS and the four years after the conveyance from Parkway (see Turrisi v Ponderosa, Inc., 179 AD2d 956, 958-959 [1992]; Levine v 465 W. End Ave. Assoc., 93 AD2d 735, 735-736 [1983]; compare Young v Hanson, 179 AD2d 978, 979 [1992]).

shopping plaza construction project included removing the pavement on Ozalid Road, regrading the roadbed, and replanting that area, but plaintiffs do not claim that any of this work was negligently performed or directly caused Scheffield's accident. Instead, they assert that the road's removal required Scheffield to use the grassy slope to reach the vault, and that the slope was either inherently unsafe because it was too steep in its natural form — which would not give rise to liability for affirmative creation of a dangerous condition — or became unsafe because Parkway regraded it and increased its steepness. However, Parkway demonstrated that the steepness of the slope was not changed, by submitting the affidavit of a project manager who asserted that the grassy slope existed before the shopping plaza was constructed, that it was not affected by the removal of Ozalid Road, and that its steepness was not altered. Plaintiffs submitted no contradictory evidence. Plaintiffs contend upon appeal that topographic maps reveal the perimeter of the parking lot at the top of the slope to be slightly higher following the construction of the shopping plaza. However, plaintiffs do not argue that the maps reveal a change in the steepness of the slope, as opposed to its height, and there is no clear causal connection. Moreover, this alleged height differential was not mentioned in the affidavit of plaintiffs' surveyor, and counsel's assertion does not constitute "proof in admissible form which would provide the necessary foundation" for any claim based upon a change in the slope's height (Patterson v Palmieri, 284 AD2d 852, 853 [2001]; accord Bergstrom v McChesney, 92 AD3d 1125, 1126 [2012]). Plaintiffs thus failed to establish the existence of issues of fact as to whether Parkway affirmatively created a dangerous condition (compare Middleton v Dovale, 4 AD3d 345, 346 [2004]).[2] For the reasons above, we find that summary judgment should have been granted in favor of BRRS and Parkway, the former property owners.

---

    [2] We note that it remains unclear whether Parkway had some role as a contractor. Parkway averred that it retained an engineering firm to design and supervise the project, but did not specifically state whether this firm or some other entity acted as the contractor.

As for Vestal, plaintiffs assert that the grassy slope constituted a dangerous condition that posed a hazard to Verizon employees seeking to access the easement parcel. Supreme Court granted summary judgment dismissing the complaint against Vestal based upon its determination that, as a servient owner, Vestal had no duty to repair or maintain access to the easement parcel. We agree that Vestal is entitled to summary judgment, but upon different grounds.[3] Vestal was required to support its summary judgment motion with a showing "that it maintained the premises in a reasonably safe condition and that it did not create or have notice of any allegedly dangerous condition" (Barley v Robert J. Wilkins, Inc., 122 AD3d 1116, 1117 [2014]). Vestal demonstrated without contradiction that it did not create a dangerous condition; the undisputed record reveals that construction of the shopping plaza was complete before Vestal took ownership and that it made no changes in the area thereafter. Likewise, Vestal demonstrated that it had no actual notice of any dangerous condition. There had been no prior falls or accidents on the grassy slope, and neither Vestal nor the property's former owners received any complaints from Verizon about the slope's steepness or any other difficulty in accessing the easement parcel in the 11 years during which its workers used this area. Accordingly, to be entitled to summary judgment, Vestal was required to demonstrate as a matter of law that it had no constructive notice of any defect that "was visible and apparent and [had] existed for a sufficient period of time prior to the accident to permit [Vestal] to discover it and take corrective action" (Tate v Golub Props., Inc., 103 AD3d 1080, 1081 [2013] [internal quotation marks and citation omitted]).

_____

[3] Defendants' motions did not address the question whether Vestal owed a duty as the servient owner to maintain the easement parcel or, more specifically, whether it shared the use of the easement parcel with Verizon and, thus, may have had shared maintenance responsibilities for that area (see Tagle v Jakob, 97 NY2d 165, 169 [2001]). Thus, the parties did not have an opportunity to develop the record on the issue (see Jones v Castlerick, LLC, 128 AD3d 1153, 1154 [2015]).

        As previously noted, Vestal had sufficient time to discover
and address any existing defect in the property (102 AD3d at
993).  Nevertheless, absent any history of falls or complaints,
we are unpersuaded that the mere fact that a naturally-formed
grassy slope existed near the easement parcel was sufficient to
raise issues of fact as to Vestal's constructive notice.  The
fact that the slope was slippery in rainy weather, without more,
does not establish the existence of a dangerous condition (see
Medina v Sears, Roebuck & Co., 41 AD3d 798, 799 [2007]; Todt v
Schroon Riv. Campsite, 281 AD2d 782, 783 [2001]).  As for its
steepness, photographs and topographic maps reveal a grass-
covered slope in the area between the vault and the parking lot
that varies in its grade, with some areas sloping more gradually
than others.  Scheffield testified that the pitch of the slope
varied in different locations and described the parts of the
slope that he had safely traversed before the accident as "fairly
gradual."  Plaintiffs' surveyor stated that the grade of the
slope in the 75-foot-wide area bordering the parking lot ranged
from a downward slope of approximately 25% in some areas to 49%
in others; plaintiffs' engineer opined that the slope of 45% to
49% in the area of Scheffield's accident exceeded the Industrial
Code regulatory maximum for "earth ramps," but that a 25% slope
was acceptable.

        There was no pathway leading across the slope to the
easement parcel, and nothing to indicate which parts of the slope
were used by Verizon's employees in gaining access to the
easement parcel; instead, the entire area of the slope – along
with the rest of Vestal's property surrounding the easement
parcel – was generally subject to Verizon's unspecified right of
ingress and egress.  There is no record evidence that any Verizon
employees other than Scheffield ever attempted to use the steeper
section of the slope to reach the easement parcel, or that Vestal
had any reason to anticipate that they might do so (compare
Feuerherm v Grodinsky, 124 AD3d 1189, 1191-1192 [2015], lv denied
25 NY3d 907 [2015]; see also Freese v Bedford, 112 AD3d 1280,
1281 [2013]).  Thus, we find that Vestal established on a prima
facie basis that it had no constructive notice that a dangerous
condition existed on its property and that plaintiffs did not
establish the existence of triable issues of fact on this point.
Accordingly, Supreme Court properly granted summary judgment

dismissing the complaint against Vestal (see Decker v Schildt, 100 AD3d 1339, 1341-1342 [2012]; Raczes v Horne, 68 AD3d 1521, 1522-1523 [2009]; Reid v Schalmont School Dist., 50 AD3d 1323, 1324-1325 [2008]; compare Mazerbo v Murphy, 52 AD3d 1064, 1066-1067 [2008], appeal dismissed 11 NY3d 770 [2008]).

Lahtinen, J.P., McCarthy and Mulvey, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as denied the motion of defendants BRRS Associates and Parkway Plaza, LLC for summary judgment dismissing the complaint against them; motion granted and complaint dismissed against said defendants; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court