Aberger v Camp Loyaltown, Inc. (2021 NY Slip Op 01188)





Aberger v Camp Loyaltown, Inc.


2021 NY Slip Op 01188


Decided on February 25, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 25, 2021
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Barbara R. Kapnick,J.P.,
Troy K. Webber
Lizbeth González
Martin Shulman JJ.


Index No. 155230/16 Appeal No. 12184 Case No. 2019-04039 

[*1]Anna Rose Aberger, as the Guardian of the Person and Property of Robert Aberger, etc., Plaintiffs-Appellants,
v
Camp Loyaltown, Inc., et al., Defendants-Respondents.



Plaintiffs appeal from the order of the Supreme Court, New York County (Margaret A. Chan, J.), entered September 5, 2019, which granted defendants' motion for summary judgment dismissing the complaint.




Sussman & Frankel, LLP, New York (Mitchell D. Frankel of counsel), for appellants.
Hardin, Kundla, McKeon & Poletto, P.A., New York (Eric J. Koplowitz of counsel), for respondents.



KAPNICK, J.P. 


In the summer of 2015, Robert Aberger was an adult camper at Camp Loyaltown, a sleepaway camp for developmentally disabled individuals, located in upstate New York. On the night of July 21, 2015, at approximately 9:15 p.m., Robert was walking along a path behind the dining hall when he misstepped, slipped, or tripped, and fell down an embankment, striking his face on one of several rocks or boulders below. At the time, Robert was accompanied by a camp counselor. Other camp staff immediately came to his assistance and determined that he needed emergency medical services. Robert was thereafter transported to a hospital.
The record shows that the walkway is bordered by the dining hall on one side and a strip of grass adjacent to an embankment filled with rocks and boulders on the other side. The path was illuminated by light coming from inside the dining hall and also by a streetlamp located across the street from the path. At the time of Robert's accident, there was no railing or barrier along the side of the path with the steep embankment. On the night of the accident, as on most nights during the summer months, the strip of grass along the path adjacent to the steep embankment was wet from evening dew.
Plaintiff, Robert's mother and guardian, commenced this action on behalf of her son against Camp Loyaltown, Inc., the owner of the property on which the camp is situated, Citizens Options Unlimited, Inc. (COU) and AHRC Nassau, not-for-profit companies that provide various programs and services for developmentally disabled individuals, and NYSARC, Inc., a parent company of 48 different county chapters throughout New York State, of which AHRC Nassau is one. At all relevant times, Camp Loyaltown, Inc. leased the camp property to AHRC Nassau, which in turn subleased it to COU.[FN1]
In this negligence action, plaintiff alleges that defendants did not maintain the premises in a reasonably safe condition because (i) the walkway where Robert fell was wet and not paved with a slip resistant material and thus was defective; (ii) the area where Robert fell was not sufficiently illuminated; and/or (iii) there was no guard rail or barrier along the path to prevent Robert from falling down the steep embankment and hitting his face on the large rocks. The parties agree that because of Robert's developmental disabilities, he is not competent to testify as a witness and explain the facts and circumstances surrounding his accident.
Defendants moved for summary judgment dismissing the complaint. The motion court agreed with defendants that because plaintiff was unable to identify the reason for Robert's fall, all of her proposed theories were speculative and could not defeat defendants' motion, citing Siegel v City of New York (86 AD3d 452 [1st Dept 2011]).
We disagree, and modify to deny the motion as to COU, because there are issues of fact as to whether COU violated its duty to maintain the premises in a reasonably safe condition by failing to [*2]erect a railing or barrier along the side of the path adjacent to the embankment.
In the first instance, we agree that the complaint was correctly dismissed as against NYSARC, Camp Loyaltown, Inc., and AHRC Nassau. Plaintiff did not dispute NYSARC's argument before the motion court that it was not involved in the ownership or operation of the camp, and she does not address it on appeal (see Norris v Innovative Health Sys., Inc., 184 AD3d 471, 473 [1st Dept 2020]). Camp Loyaltown, Inc. and AHRC Nassau were an out-of-possession landowner and lessor, respectively, whose lease and sublease did not contractually obligate them to make repairs, and the condition on the premises that plaintiff alleges caused Robert's accident was not a significant structural or design defect in violation of a specific statutory safety provision (see generally Heim v Trustees of Columbia Univ. in the City of N.Y., 81 AD3d 507 [1st Dept 2011]; Reyes v Morton Williams Associated Supermarkets, Inc., 50 AD3d 496 [1st Dept 2008]).
As to plaintiff's claims against COU, we find that COU established prima facie that it lacked actual notice of any such defect, based on a lack of any prior complaints concerning or accidents due to the alleged slippery condition of the walkway (see e.g. Barbuto v Club Ventures Invs. LLC, 143 AD3d 606 [1st Dept 2016]; Martinez v Hunts Point Coop. Mkt., Inc., 79 AD3d 569 [1st Dept 2010]; Burko v Friedland, 62 AD3d 462 [1st Dept 2009]). COU also established that it lacked constructive notice because the fact that a sidewalk becomes more slippery when wet does not constitute an actionable defect (see Bock v Loumarita Realty Corp., 118 AD3d 540 [1st Dept 2014]), and plaintiff failed to raise any issues of fact in opposition. In addition, COU established prima facie that the area where Robert fell was adequately lit based on testimony from camp staff who came to Robert's aid and testified that they were able to see Robert and the site of the accident clearly moments after it happened. Plaintiff's expert engineer's conclusory assertions that the walkway was not sufficiently lit failed to raise an issue of fact, since he did not identify a specific standard that COU allegedly violated (see Abraido v 2001 Marcus Ave., LLC, 126 AD3d 571, 572 [1st Dept 2015]).
However, an issue of fact does exist as to whether COU violated its duty to maintain the premises in a reasonably safe condition by failing to erect a railing or barrier along the walkway. "A landowner must act as a reasonable [person] in maintaining [its] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk" (Basso v Miller, 40 NY2d 233, 241 [1976] [internal quotation marks omitted]). Indeed,
"the duty of the owner or occupier will vary with the likelihood of plaintiff's presence at the particular time and place of the injury. While [plaintiff's] status is no longer [*3]determinative, considerations of who plaintiff is and what [his or her] purpose is upon the land are factors which, if known, may be included in arriving at what would be reasonable care under the circumstances" (id.).
Moreover, a landowner or occupier "has a duty to take reasonable precautions to prevent accidents which might foreseeably occur as the result of dangerous terrain on its property by posting warning signs or otherwise neutralizing dangerous conditions" (Cohen v State of New York, 50 AD3d 1234, 1235 [3rd Dept 2008], lv denied 10 NY3d 713 [2008] [internal quotation marks and citations omitted]). "[E]ven if a hazard qualifies as 'open and obvious' as a matter of law, that characteristic merely eliminates the property owner's duty to warn of the hazard, but does not eliminate the broader duty to maintain the premises in a reasonably safe condition" (Westbrook v WR Activities-Cabrera Mkts., 5 AD3d 69, 70 [1st Dept 2004]; see also Garrido v City of New York, 9 AD3d 267 [1st Dept 2004]; Salvador v New York Botanical Garden, 74 AD3d 540 [1st Dept 2010]).[FN2] "A landlord's duty to maintain premises in a reasonably safe condition under Basso v Miller (40 NY2d 233 [1976]) is not satisfied by permitting a highly dangerous — but correctible — condition to remain, simply because the dangerous condition is obvious" (Westbrook, 5 AD3d at 74).
Plaintiff argues that the subject pathway, used by, amongst others, physically and mentally disabled campers, positioned right next to a steep embankment filled with rocks and boulders, without a properly designed safety railing or barricade, was inherently dangerous and that this dangerous condition was a substantial factor in causing Robert's fall and injuries.
COU, on the other hand, contends that a landowner or occupier has no duty to construct barriers or enclose natural geographic phenomena that are open and obvious and that the fact that the accident happened at an outdoor camp, where the conditions were inherent to the nature of the premises, affected the scope of COU's duty to maintain the premises in a reasonably safe condition. We find COU's arguments unavailing.
COU's description of the embankment as a natural geographic phenomenon is inaccurate, and thus the cases cited by COU discussing a landowner's duties in the face of natural geographic phenomena are inapposite. Cases in which courts have found that the landowner "did not owe a duty to neutralize the danger presented" (Cohen v State of New York, 50 AD3d at 1236) by erecting a barrier, for example, involved natural geographic phenomena such as a cliff (Diven v Village of Hastings-on-Hudson, 156 AD2d 538 [2d Dept 1989]), a scenic overlook (Casela v City of Troy, 161 AD2d 991 [3rd Dept 1990]), and a ravine (Cramer v County of Erie, 23 AD3d 1145 [4th Dept 2005]), or involved "natural transitory conditions existing in bodies of waters" (Cohen v State of New York, 50 AD3d at 1236), such as a whirlpool (id.), rip currents (Graham v County of Suffolk[*4], 34 AD3d 527 [2d Dept 2006]), or rogue waves (Cimino v Town of Hempstead, 110 AD2d 805 [2d Dept 1985], affd 66 NY2d 709 [1985]). In this case, however, the embankment was not a "natural transitory condition" existing in a body of water, and while the rocky terrain may have been open and obvious or even a natural part of the topography, a landowner's duty to maintain the premises in a reasonably safe condition, as noted earlier, is not eliminated by the presence of an open and obvious hazard (Westbrook v WR Activities-Cabrera Mkts., 5 AD3d at 70).
The facts of Scheffield v Vestal Parkway Plaza, LLC (139 AD3d 1161 [3d Dept 2016]), cited by COU and the dissent, are completely different from the facts in our case. Scheffield involved a plaintiff who, in the course of his employment with Verizon, was attempting to gain access to a communications vault on an easement parcel, when he stepped over a low railing and slipped and fell on a wet, grassy slope that bordered the parking lot of a shopping plaza. Here, there was no railing for Robert to step over; nor was he attempting to gain access to the embankment. Moreover, we have already found that COU lacked actual and constructive notice of any defect based on the alleged slippery condition of the walkway, just as the Court in Scheffield found that the defendant did not create a dangerous condition or have notice ofany dangerous condition caused by the grassy slope there, and thus we need no longer deal with this allegation by plaintiff.
Our dissenting colleague contends that "defendant cannot reasonably be made responsible for every possible hazard associated with walking on natural terrain exposed to the elements in an outdoor camp facility." The dissent further asserts that the fact that Camp Loyaltown was a camp exclusively for people with disabilities does not in and of itself confer upon COU a heightened duty to Robert. However, this case does not involve a question of heightened duty, but rather a question of reasonable care under all the circumstances. The issue of "who [Robert] is and what his purpose" was for being at the camp "are factors which, if known, may be [considered by the fact finder] in arriving at what would be reasonable care under the circumstances" (see Basso v Miller, 40 NY2d at 241).
On the issue of foreseeability, the dissent relies upon Sauer v Hebrew Inst. of Long Is. (17 AD2d 245 [1st Dept 1962]; affd 13 NY2d 913 [1963]) and Fintzi v New Jersey YMHA-YWHA Camps (97 NY2d 669 [2001]). In Sauer, the campers were playing a supervised "water fight" game, which was played on a grass-covered area, in which opposing groups of boys doused each other with water from cups or water pistols. In running away from another camper, the plaintiff slipped on the grass and struck his head on a concrete wall at the side of the grassy area. This Court held that the "camp could not reasonably be made responsible . . . for the consequences of every possible hazard of play activity," but "was [*5]required, rather, to guard against dangers which ought to have been foreseen in the exercise of reasonable care" (Sauer, 17 AD2d at 246). Similarly in Fintzi, where a camper slipped and fell on wet ground during a relay race, the Court of Appeals agreed with the dissenting opinion in this Court (238 AD2d 358, 359 [1st Dept 2001]), finding that merely allowing children to play on wet grass does not constitute negligence. The Court further held that the defendant camp, as an organizer of sporting or recreational events, "owe[d] a duty to exercise only reasonable care to protect participants 'from injuries arising out of unassumed, concealed, or unreasonably increased risks'" (Fintzi, 97 NY2d at 670).
Here, however, Robert was not participating in a supervised camp activity or game at the time of his accident, but rather was walking on an unprotected pathway adjacent to the dining hall that happened to have been built next to an embankment filled with rocks and boulders. Thus, the question is not whether the camp unreasonably increased the risk, as our dissenting colleague contends, but whether COU satisfied its duty to maintain the premises in a reasonably safe condition under all the circumstances, and to "guard against dangers which ought to have been foreseen in the exercise of reasonable care" (Sauer, 17 AD2d at 246). These are questions of fact for the trier of fact, not for the Court, to determine.
We have considered plaintiff's remaining arguments and find them unavailing.
Accordingly, the order of Supreme Court, New York County (Margaret A. Chan, J.), entered September 5, 2019, which granted defendants' motion for summary judgment dismissing the complaint should be modified, on the law, to deny the motion as to defendant Citizens Options Unlimited, Inc. (COU) insofar as the complaint alleges that COU violated its duty to maintain the premises in a reasonably safe condition by failing to erect a railing or barrier along the walkway to protect plaintiff's ward against dangerous terrain on its property, and otherwise affirmed, without costs.
All concur except Webber, J. who dissents in part in a separate Opinion.




WEBBER, J. (dissenting in part)
 

I disagree that a triable issue of fact exists as to whether Citizens Options Unlimited, Inc. (COU) violated its duty to maintain the premises in a reasonably safe condition by failing to erect a railing or barrier along the side of the path adjacent to the embankment. Accordingly, I would affirm Supreme Court's decision in all respects.
I take no issue with the majority's statement that "[a] landowner must act as a reasonable [person] in maintaining [its] property in a reasonably safe condition" (quoting Basso v Miller, 40 NY2d 233, 241 [1976] [internal quotation marks omitted]). A defendant '"has a duty to take reasonable precautions to prevent accidents which might foreseeably occur as the result of dangerous terrain on its property,' by posting warning signs or otherwise neutralizing [*6]dangerous conditions" (Cohen v State of New York, 50 AD3d 1234, 1235 [3d Dept 2008], lv denied 10 NY3d 713 [2008] [citation omitted]). However, this Court has held that the mere fact that an outdoor walkway exposed to the elements becomes wet from rainfall or some other natural condition is insufficient to establish the existence of a dangerous condition (Greco v Pisaniello, 139 AD3d 617, 618 [1st Dept 2016]; Bock v Loumarita Realty Corp., 118 AD3d 540, 541 [1st Dept 2014]; McGuire v 3901 Independence Owners, Inc., 74 AD3d 434, 435 [1st Dept 2010]). Here, Robert was walking on a dedicated path that was described in the record as consisting of dirt and gravel with grass on either side and that was adjacent to an embankment.
While apparently recognizing that there is no duty of a landowner to erect a railing or barrier where, as here, there was a natural geographic phenomenon that was open and obvious, the majority argues that the description of the embankment by COU as a natural geographic phenomenon is inaccurate. Yet, it gives no basis for this conclusion. Embankment is defined as "a raised structure (as of earth or gravel) used especially to hold back water or to carry a roadway" (Merriam-Webster's Collegiate Dictionary (11th ed.). The embankment was described in the record as a "naturally formed hill; a naturally sloped surface." Contrary to the majority's argument, there is nothing to suggest that it was not a natural part of the topography. Scheffield v Vestal Parkway Plaza, LLC (139 AD3d 1161 [3d Dept 2016]), which was cited by defendant, presents facts similar to those here. In Scheffield, the plaintiff's fall occurred in a grassy area adjoining the parking lot of a shopping plaza. The Third Department held that the fact that a naturally formed grassy slope was slippery in rainy weather, without more, did not establish the existence of a dangerous condition.
Similarly, in Diven v Village of Hastings-On-Hudson (156 AD2d 538 [2d Dept 1989]), which is cited by the majority, the infant plaintiff climbed a cliff and fell as he was descending. The Second Department held that a landowner has no duty to erect a barrier or fence to enclose natural geographical phenomena that do not represent latent dangers or conditions. The Court noted that the infant plaintiff's own deposition testimony established conclusively that any danger represented by the cliff in question was open and obvious, rather than latent. 
The majority's reliance on Salvador v New York Botanical Garden (74 AD3d 540 [1st Dept 2010] [the plaintiff ran into a telephone enclosure in a darkened hallway while chasing after a child in her care]), Garrido v City of New York (9 AD3d 267 [1st Dept 2004] [the plaintiff tripped over a construction sign that had fallen in the street]), and Westbrook v WR Activities-Cabrera Mkts. (5 AD3d 69, 70 [1st Dept 2004] [the plaintiff tripped over a cardboard box left in a supermarket aisle])is misplaced. These cases do not address the [*7]issue of an open and obvious natural condition at an outdoor camp where the conditions are inherent to the nature of the premises.
As to the foreseeability of this accident, it is not substantially different from this Court's holding in Sauer v Hebrew Inst. of Long Is. (17 AD2d 245 [1st Dept 1962], affd 13 NY2d 913 [1963]). In Sauer, the plaintiff was injured while playing a water fight game supervised by the defendant's personnel at summer camp. In running away from an opponent, the plaintiff slipped on the grass and struck his head on a concrete walk. Thereafter, the plaintiff and his guardian ad litem brought action against the defendant. This Court held that "[t]he defendant, as operator of a camp for boys, could not reasonably be made responsible in damages for the consequences of every possible hazard of play activity" (17 AD2d at 246). We found that it was not "demonstrated that the water fight game was more hazardous than any ordinary camp activity involving running" (id.).
In Fintzi v New Jersey YMHA-YWHA Camps (283 AD2d 358 [1st Dept 2001], revd 97 NY2d 669 [2001]), the plaintiff participated in a relay race at a summer camp operated by the defendant. The race occurred on a grass field marked off by four cones, and the field was wet due to morning humidity and fog. While running the course, the plaintiff slipped and fell on the wet ground ultimately fracturing his arm. In a 3-2 decision, this Court affirmed Supreme Court's denial of the defendant's motion for summary judgment. The Court of Appeals reversed, agreeing "with the dissenters below that merely allowing children to play on wet grass does not constitute negligent supervision" (97 NY2d at 670). The dissent reasoned that "in the absence of evidence that the camp's employees acted in some way to expose the runners to increased risks beyond the naturally occurring conditions of humidity and fog, the camp may not be held responsible. "To do so would . . . 'so sterilize camping activity . . . as to render it sedentary,' precluding all but the most innocuous activities whenever conditions were less than ideal" (283 AD2d at 360 [Andrias, J., dissenting], citing Sauer, 17 AD2d at 246).
As noted by the majority, Robert was not participating in a supervised camp activity or game at the time of his accident, but rather was walking, with a counselor, on a dirt and grass path that was adjacent to the dining hall and on an embankment [FN3] - a path that Robert and others had traversed countless times before without incident.
Here, there is no evidence that defendant increased the risk associated with walking on the path. More importantly, defendant cannot reasonably be made responsible for every possible hazard associated with walking on natural terrain exposed to the elements in an outdoor camp facility.
While the majority correctly states that this case does not involve a question of a heightened duty owed by defendant but rather a question of reasonable care, its analysis suggests [*8]otherwise.
The fact that Camp Loyaltown was a camp exclusively for people with disabilities does not confer upon COU a heightened duty to Robert, especially here, where there is no evidence that Robert's disability had anything to do with the accident. The majority argues that we must look at who Robert is and his purpose for being at the camp. The evidence submitted was that Robert was a high functioning and "independent" camper who "did not require one-to-one supervision." His mother noted that he was "capable of walking independently on hilly, uneven, and difficult terrain." In fact, Robert had attended the camp for approximately 10 years before the accident and was not involved in any prior accidents. Conceivably, he walked this same path three times a day for meals in the dining hall.
Further, whether a heightened duty of care was owed is not a triable issue of fact where Robert's accident was attributed by his camp counselor, who was supervising him at the time of the accident, to a bad step. This Court has held that "[s]ince it is just as likely that the accident could have been caused by some other factor, such as a misstep or loss of balance, any determination by the trier of fact as to the cause of the accident would be based upon sheer speculation" (Scivoletti v NY Mercantile Exch., Inc., 38 AD3d 326, 327 [1st Dept 2007] [internal quotation marks omitted], lv denied 9 NY3d 802 [2007]).
In my opinion, there is no triable issue of fact that precludes summary judgment. Accordingly, I would affirm Supreme Court's decision granting defendants' motion for summary judgment dismissing the complaint.
Order, Supreme Court, New York County (Margaret A. Chan, J.), entered September 5, 2019, modified, on the law, to deny the motion as to defendant Citizens Options Unlimited, Inc. (COU) insofar as the complaint alleges that COU violated its duty to maintain the premises in a reasonably safe condition by failing to erect a railing
or barrier along the walkway to protect plaintiff's ward against dangerous terrain on its property, and otherwise affirmed, without costs.
Opinion by Kapnick, J.P. All concur except Webber, J. who dissents in part in an Opinion.
Kapnick, J.P., Webber, González, Shulman, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 25, 2021



Footnotes

Footnote 1: The lease between Camp Loyaltown, Inc. and AHRC Nassau required that AHRC Nassau "take good care of the leased property, . . . keep the same in good and substantial order and repair, and . . . make all structural and non-structural, exterior and interior, ordinary and extraordinary, foreseen and unforeseen, repairs, renewals and replacements necessary to that end." In turn, the sublease between AHRC Nassau and COU required that COU "take good care of the premises, fixtures, and appurtenances and make all repairs necessary to preserve same in good order and condition at its own cost and expense." 

Footnote 2: Although the particular facts of each of these cases differ, they are all cited for the legal proposition that a property owner has a broad duty to maintain its premises in a reasonably safe condition.

Footnote 3: While the majority refers to an "embankment filled with rocks and boulders," the record indicates only that there were rocks on the embankment.